## LICENSE AGREEMENT

This License Agreement ("Agreement") is made on this 15th day of July, 2002 (the "Effective Date") by and between the National Association of Insurance Commissioners ("NAIC"), a nonprofit Delaware corporation, with principal offices located at 2301 McGee Street, Suite 800, Kansas City, Missouri 64108 and Aithent, Inc. ("Aithent") a New York corporation, with principal offices located at 17 State Street, New York, New York 10004 (collectively referred to as the "Parties").

## RECITALS

A.  The NAIC is a nonprofit corporation organized under the laws of the State of Delaware whose membership consists of the chief insurance regulatory officials of the fifty states, the District of Columbia and the United States territories (collectively, the "United States");

B.  Aithent is a corporation organized under the laws of the State of New York that provides software development services, maintenance services and markets software products;

C.  Aithent has developed a proprietary system known as the Licensing Environment Online ("LEO") (as further defined below), an integrated system for insurance producer licensing allowing state insurance departments to electronically accept, process and manage licensing information in accordance with regulatory requirements;

D.  The NAIC desires to develop State-Based Systems ("SBS"), a secured, proprietary web-based system providing software, tools, databases, and information to provide participating state insurance departments market conduct, licensing and solvency functions; and

E.  The Parties desire to license to the NAIC the exclusive rights in LEO within the Insurance Sector (as that term is defined in this Agreement) in the United States, so that LEO shall be used as the basis for the development of SBS.

**NOW, THEREFORE,** in consideration of the mutual promises and agreements contained herein, it is hereby agreed to as follows:

EXHIBIT 3

# 1. DEFINITIONS

a. **Electronic Transaction**: the electronic interaction within SBS between regulatory and non-regulatory persons and entities within the Insurance Sector with regard to a particular regulatory function including but not limited to non-resident licensing, non-resident licensing renewals, appointment renewals, resident licensing, resident licensing renewals and continuing education transactions. Exhibit A lists the initial categories (types) of Electronic Transactions. Such categories may be expanded by the addition of specific Electronic Transactions by mutual agreement of the Parties.

b. **Insurance Sector**: the market within the United States, whereby and solely to the extent any

(i) organizations and persons engaged in the business of insurance; and

(ii) organizations and persons providing support services to those engaged in (a) the business of insurance or (b) the regulation of insurance

engage in activities with, between or on behalf of state and federal governments for purposes of complying with or carrying out the laws and regulations governing the business of insurance.

c. **LEO**: the Licensing Environment Online, a proprietary web-based system developed by Aithent to electronically accept, process and manage state licensing and regulatory information in accordance with the specifications and requirements provided in Exhibit B.

d. **LION**: the Licensing Information Online Network, a proprietary client-server based system developed by Aithent that is a predecessor of LEO.

e. **License Fees**: fees which may be charged by the NAIC to SBS users for the non-exclusive right to access and use SBS and which are to be apportioned between the Parties in accordance with the terms of this Agreement.

f. **Master Services Agreement**: that certain agreement entered into by the Parties on July 15, 2002 under which Aithent has the right to provide certain software development services as more fully set forth therein.

g. **Module**: a software application or program that enables a particular Electronic Transaction.

h. **Net Revenue**: in the case of the NAIC, total amount invoiced by the NAIC and its Affiliate NIPR for License Fees and Transaction Fees, and

CONFIDENTIAL     Attorney's Eyes Only     AIT_E00327425

in the case of Aithent, license fees invoiced for licenses of LEO during the Term, in each case less return adjustments or write offs for bad debt in accordance with the applicable provisions of Exhibit C.

i.    **Referral**: when the NAIC sends, directs or connects an insurance regulatory entity located outside of the United States with Aithent.

j.    **SBS**: State-Based Systems, a web-based system proprietary to the NAIC providing software, tools, databases, and information to facilitate state insurance departments in their market conduct, licensing and solvency functions.

k.    **State Insurance Department**: a state insurance department that has signed an SBS License Agreement and paid all applicable fees.

l.    **Transaction Fee**: fees charged by the NAIC for each Electronic Transaction in or through SBS and which are to be apportioned between the Parties in accordance with the terms of this Agreement.

2.    **EXCLUSIVE LICENSE TO NAIC**

a.    Subject to the terms of this Agreement including, without limitation, the provisions of Section 7(d)(1) below, Aithent hereby grants, and the NAIC hereby accepts, a perpetual, non-transferable, irrevocable, exclusive right to make, use, reproduce, modify, adapt, create derivative works based on, translate, distribute, transmit, and display LEO within the Insurance Sector solely for the purpose of development, implementation, operation, modification, enhancement and maintenance of SBS (the "SBS License"). Subject to the terms of this Agreement, the SBS License shall include the right of the NAIC to use, access, modify, reverse engineer, decompile, and create derivative works based on the LEO source code solely for the purposes set forth above, provided the NAIC shall have no right of distribution or disclosure of the LEO source code, including any modifications to the source code.

b.    Subject to the terms of this Agreement, including without limitation Section 7(d)(1), the NAIC shall also have a perpetual, non-transferable, irrevocable exclusive license solely within the Insurance Sector to any future enhancements, modifications, derivative works, and updates to LEO developed by Aithent.

c.    Subject to the terms of this Agreement, the NAIC shall have the right to license the use, access and distribution of SBS (in object code form only) to third parties solely within the Insurance Sector.

CONFIDENTIAL                    Attorney's Eyes Only                    AIT_E00327426

d.  Except for the license rights specifically granted herein to the NAIC for LEO within the Insurance Sector, Aithent retains all right, title and interest in LEO.

3.  **EXCLUSIVE LICENSE TO AITHENT**

a.  Subject to the terms of this Agreement, including without limitation Section 7(d)(2), the NAIC hereby grants, and Aithent hereby accepts, a perpetual, transferable (in accordance with Section 15), irrevocable, exclusive right to access, make, use, reproduce, modify, adapt, distribute, sub-license, create derivative works based on, and license such derivative works to third parties anywhere in the world and for any entities outside of the Insurance Sector, such portion of SBS which excludes (a) LEO and (b) any upgrade, enhancement or modification to LEO (the "Aithent License"). The Aithent License shall also include the right of Aithent to use, access, modify, reverse engineer, decompile, and create derivative works based on modifications to the SBS source code related to that portion of SBS licensed under the Aithent License. Aithent shall have no right of distribution or disclosure of the SBS source code, including any modifications to the source code.

b.  For avoidance of doubt, Aithent shall have a right of first refusal to design, create and implement all modifications to SBS as may be contemplated by the NAIC or its affiliate, the National Insurance Producer Registry ("NIPR"). Notwithstanding the foregoing, the NAIC and NIPR shall always have the right to design, create and implement such modifications internally. The work on SBS to be performed by Aithent shall be pursuant to the Master Services Agreement and further specified in Scope of Works attached thereto.

c.  Except for the license rights specifically granted herein to Aithent for the use of SBS outside of the Insurance Sector, the NAIC retains all right, title and interest in SBS.

4.  **DELIVERY OBLIGATIONS**

a.  Aithent represents and warrants that LEO, when delivered to the NAIC, will meet the specifications and requirements provided in Exhibit B, unless otherwise set forth therein.

b.  Within ten (10) days after execution of this Agreement, Aithent shall deliver LEO, in object code and source code format, and its supporting documentation to the NAIC (the object code, source code, and documentation collectively the "Delivered Version").

c.  During the first three (3) months following the Effective Date, Aithent shall provide at no charge at Aithent's site, reasonable technical support and training to the NAIC and its staff to enable the NAIC to load, execute and operate the Delivered Version of LEO on the NAIC's computer systems. In

CONFIDENTIAL                    Attorney's Eyes Only                    AIT_E00327427

the event the NAIC elects to conduct training at a NAIC site, Aithent shall provide one (1) week of on-site training at no cost to the NAIC except for the reasonable travel costs of Aithent's trainer(s). In the event the NAIC requests additional on-site support at its location, such work will be performed pursuant to the Master Services Agreement and the NAIC shall pay Aithent for such work on a time and materials basis at Aithent's then current rates, as set forth in the Master Services Agreement.

d. LEO shall be used as the foundation in the development, implementation, operation, maintenance and enhancement of SBS.

e. In the event either Party makes an enhancement or modification to LEO during the term of this Agreement, such Party shall provide to the other Party all necessary information, including applicable changes to the source code, and related documentation for the implementation of such enhancement or modification no later than thirty (30) days after such enhancement or modification is placed into production.

## 5. TITLE AND OWNERSHIP

a. Aithent owns all proprietary right, title and interest in and to LEO, owns the patent, copyright, trade secret, trade name and all other intellectual property rights in and to LEO including, but not limited to, the data bases, source codes, object codes, computer programs, compilations and presentation format; and has full power, right and authority to obtain, transmit and distribute LEO to the NAIC in the manner provided in this Agreement. Aithent retains all right, title, and ownership to any modifications to, derivative works of and improvements to LEO made by the NAIC or NAIC's affiliates and agents, whether or not authorized, provided that the development, implementation, modification, and enhancement of SBS shall not be considered a modification to, derivative work of, or improvement to LEO. It is expressly understood the NAIC obtains no rights in LEO except as expressly provided in this Agreement or in a separate agreement executed by both Parties.

b. The NAIC owns all proprietary right, title and interest in and to SBS, including the patent, copyright, trade secret, trade name and all other intellectual property rights in and to SBS including, but not limited to, the data bases, source codes, object codes, computer programs, compilations and presentation format. The NAIC retains all right, title, and ownership to any modifications to, derivative works of and improvements to SBS made by Aithent or its agents, whether or not authorized, provided that the development, implementation, modification, and enhancement of LEO shall not be considered a modification to, derivative work of, or improvement to, SBS. It is expressly understood Aithent obtains no rights in SBS except as

CONFIDENTIAL Attorney's Eyes Only AIT_E00327428

Case 4:11-cv-00173-GAF   Document 89-3   Filed 01/14/13   Page 5 of 36

expressly provided in this Agreement or in a separate agreement executed by both Parties.

c. Subject to the terms of the Master Agreement with respect to Generic Materials (as that term is defined in the Master Service Agreement) each Party shall retain all rights in any software, ideas, concepts, know-how, development tools, techniques, specifications, requirements, or any other proprietary material or information that it owned or developed prior to the Effective Date, or any other proprietary material or information that it owned or developed after the Effective Date without reference to or use of the intellectual property or Confidential Information (as defined below) of the other Party. To the extent Aithent's proprietary computer software programs, ideas, concepts, know-how, development tools, or techniques, including LEO and any updates or modifications thereto regardless of the source of such updates or modifications, (collectively "Aithent Programs") are incorporated into or embedded in SBS, the NAIC, subject to the terms of this Agreement (including without limitation the provisions of Section 7(d) below), shall have a perpetual, irrevocable, non-transferable, exclusive license to the Aithent Programs within the Insurance Sector solely for purposes of development, implementation, operation, modification, enhancement and maintenance of SBS.

6. **COMPENSATION**

   a. **Royalty to Aithent**

      i.    In consideration of the rights granted by Aithent to the NAIC herein, the NAIC shall pay a royalty ("SBS Royalty Payment") which shall be calculated as fifty percent (50%) of the Net Revenue received by the NAIC or NIPR, for the Electronic Transactions listed in Exhibit A, except that the SBS Royalty Payment shall not include Net Revenue for appointment/termination transactions with those State Insurance Departments identified in Exhibit D that are processing electronic appointment/termination transactions through NIPR prior to the Effective Date. The NAIC shall not be obligated to pay, and Aithent shall not be entitled to collect, royalties on other fees (e.g., credit card processing fees) or monies collected by or on behalf of State Insurance Departments. Upon Aithent's request, the NAIC shall identify to Aithent the types of such other fees and monies.

      ii.   Aithent shall at all times be solely entitled to collect all royalties and fees due to Aithent from Aithent's license of LION to the State Insurance Departments set forth in Exhibit E for so long as such State Insurance Departments continue to license any portion of LION. To the extent that a State Insurance Department identified

in Exhibit E (a) desires to license LEO but not SBS or (b) requests Aithent to provide services not provided by the NAIC (including Electronic Transactions not provided via SBS), Aithent shall at all times be solely entitled to all such royalties and fees resulting therefrom, provided the NAIC is not required to support or maintain LEO for such State Insurance Departments. Notwithstanding the foregoing, if a State Insurance Department identified in Exhibit E elects to license both LEO and SBS and the NAIC processes LEO-based electronic transactions at no cost to Aithent, the SBS Royalty Payment shall apply to the sum of (y) the Transaction Fees generated by the Electronic Transactions and (z) any transaction fees generated by the LEO-based electronic transactions processed through SBS for such state, provided the NAIC is not required to support or maintain LEO for such State Insurance Department.

iii.     Each time a State Insurance Department implements an Electronic Transaction using SBS, the SBS Royalty Payment for that State Insurance Department's Electronic Transaction shall be due for a period of five (5) years from the date of first implementation of such Electronic Transaction (the "SBS Royalty Period"). After the expiration of a SBS Royalty Period, the NAIC shall no longer owe, and Aithent expressly waives the right to, the SBS Royalty Payment for such State Insurance Department's Electronic Transaction. Notwithstanding the foregoing, the SBS Royalty Payment for Electronic Transactions for State Insurance Departments listed in Exhibit E shall be due and owing from the date of first implementation of such State Insurance Department's Electronic Transaction up and until the tenth (10th) anniversary of the Effective Date, even if such period is longer than the SBS Royalty Period for such Electronic Transaction.

iv.     The SBS Royalty Payment shall be due on a monthly basis. On or before the fifteenth (15th) day of every calendar month, the NAIC shall pay to Aithent by check a SBS Royalty Payment based on the License Fees and Transaction Fees received for the preceding calendar month. Each SBS Royalty Payment shall be delivered by overnight courier and shall be accompanied by a detailed statement in a format as provided for in Exhibit F (or as otherwise agreed to by the Parties) itemizing the number of Electronic Transactions by State Insurance Department corresponding to the License Fees and Transaction Fees.

v.     The NAIC and NIPR, shall have sole discretion to establish, increase or decrease License and Transaction Fees for SBS within the Insurance Sector. Notwithstanding the foregoing, the NAIC

CONFIDENTIAL                    Attorney's Eyes Only                    AIT_E00327430

represents it will support, and recommend to the NIPR board of directors, that a Transaction Fee remain in effect and be assessed by NIPR for the transactions listed in Exhibit A; and, moreover, the NAIC will not take any actions to drastically reduce or eliminate such Transaction Fees unless the NAIC's Executive Committee determines there is a need to do so in order to satisfy important regulatory policy. Notwithstanding the foregoing, the price of a Transaction Fee for the transactions listed in Exhibit A shall not be reduced by more than fifteen percent (15%) during any calendar year unless otherwise mutually agreed to by the Parties.

    vi.    The NAIC shall make reasonable efforts to market SBS.

b.    **Royalty to the NAIC From Referrals**

    i.    Aithent shall pay a royalty ("Referral Royalty Payment") to the NAIC for any Referrals made by the NAIC which result in a license of LEO during the ten (10) years following the Effective Date. The Referral Royalty Payment shall equal twenty-five (25%) of Net Revenue received by Aithent as a result of the license of LEO. The royalty shall be due for a period of five (5) years (the "Referral Royalty Period") after the date Aithent first receives Net Revenue from each such license.

    ii.    Referral Royalty Payment shall be due on a quarterly basis. On or before the fifteenth (15th) day of the first month of each calendar quarter, Aithent shall submit the Referral Royalty Payment based on the Net Revenues received for the preceding calendar quarter. With each Referral Royalty Payment, Aithent shall also send a detailed statement, in a format provided for in Exhibit F (or as otherwise agreed to by the Parties) supporting the Referral Royalty Payment. After the expiration of the Referral Royalty Period for each such Referral, Aithent shall no longer owe, and the NAIC expressly waives the right to, the Referral Royalty Payment for each such Referral.

c.    **Recordkeeping and Audit**

Each Party shall maintain business and financial records containing information sufficient to verify the completeness and accuracy of each Royalty Payment made to the other Party for a period of at least three (3) years after the period to which such Royalty Payment relates. No more than once each calendar year, and at other times as provided for in Section 7(d), each Party shall have the right, upon reasonable advance notice to the other Party, to have a nationally recognized accounting firm designated by the Party subject to examination examine such records during regular business hours

CONFIDENTIAL    Attorney's Eyes Only    AIT_E00327431

and in a manner designed not to disrupt the examined Party's normal business operation, for the sole purpose of verifying the completeness and accuracy of the Royalty Payments; provided that as a condition to making such investigation the accountant making such investigation shall execute an agreement, in reasonable form, to maintain the confidentiality of such records and not to disclose any information with respect thereto to any person, including the Party who is the subject of the examination, other than to confirm to the Parties the completeness and accuracy of the Royalty Payments or to advise the Parties of any discrepancies thereof. In the event such examination shall disclose that a Party understated Royalty Payments for any period, such Party shall pay within fifteen (15) days after the completion and disclosure of the examination to the other Party an amount equal to the amount of all unpaid Royalty Payments, plus interest for the period from the date of the Royalty Payment statement through the date payment is received equal to the prime rate listed in the Wall Street Journal as of the date of the statement for the understated Royalty Payment. If any Royalty Payment for an annual period is understated in excess of five percent (5%), the Party understating the Royalty Payment shall pay the reasonable costs of conducting the audit, otherwise the Party requesting the audit shall bear such costs. If such audit shall identify that an overpayment has been made, such overpayment shall be deducted in full from the paying Party's next payment to the other Party, provided that, after such deduction, any remaining overpayment shall be carried over to future payments by the paying Party until such overpayment has been extinguished; provided, however, that if no further payments are scheduled to be made by the paying Party, any remaining overpayment shall be promptly paid by the receiving Party to the other Party.

7. **TERM AND TERMINATION**

a. Each Party's obligation to make royalty payments to the other Party under this Agreement shall end on the tenth (10th) anniversary of the Effective Date. At that time the license granted hereunder to the NAIC shall be deemed fully paid. In the alternative, at any time after the fifth (5th) anniversary of the Effective Date, the NAIC may elect to pay up the license at any time by paying an amount to Aithent equal to the net present value (calculated using the prime rate listed in the *Wall Street Journal* as of the date the NAIC tenders payment to Aithent (the "Tender Date")) applied to the aggregate annual SBS Royalty Payment projected for each of the next three (3) years. Such aggregate annual SBS Royalty Payment shall be calculated by taking the annual growth rate of the SBS Royalty Payment (calculated over the two (2) years preceding the Tender Date) applied to the aggregate annual SBS Royalty Payment for the twelve (12) months preceding the Tender Date.

b. The Parties may terminate this Agreement by mutual consent upon such terms as they may agree upon in writing.

CONFIDENTIAL Attorney's Eyes Only AIT_E00327432

c. In the event of a material breach of this Agreement other than a breach due to the failure of a Party to pay any amounts due to the other Party, the non-breaching Party shall provide written notice to the breaching Party specifying the material breach. The breaching Party shall have sixty (60) days from the receipt of written notice within which to cure the material breach. If the breaching Party fails to cure the material breach, the non-breaching Party shall be entitled to exercise its rights under the law, subject to the terms of Sections 7(d) and 13 below.

d. In the event of a material breach of this Agreement due to a Party's failure to pay any amounts due to the other Party pursuant to Section 6 of this Agreement, the following conditions shall apply:

(1) If the breaching Party is the NAIC,

(a) on the first such breach of the Agreement, the NAIC shall have thirty (30) days from the receipt of written notice of such breach within which to cure the breach. No additional penalty other than those set forth herein for late payments shall attach if such breach is cured within the prescribed period.

(b) if such breach is not cured within the prescribed period, or in the event a second breach of the Agreement occurs within two (2) years of the first breach that remained uncured at the expiration of the prescribed cure period and such second breach is not cured within twenty (20) days from the receipt of written notice of such breach, Aithent may immediately terminate the NAIC's exclusivity rights under the Agreement. The NAIC may continue to use the LEO software licensed under the SBS License, however, the exclusivity provisions of the SBS License shall immediately and automatically terminate as of Aithent's written notice of breach to the NAIC and the NAIC shall remain obligated to pay all SBS Royalty Payments for all States to which SBS is licensed or may be licensed thereafter.

(c) in the event a third such breach of the Agreement occurs within two (2) years of the second breach that remained uncured at the expiration of the prescribed cure period and such third breach is not cured within ten (10) days from the receipt of written notice of such breach, the NAIC shall promptly pay to Aithent liquidated damages in the amount of fifty percent (50%) of the SBS Royalty Payment which was paid (or should have been paid) by the NAIC to Aithent in the prior quarter. For avoidance of doubt, the NAIC may continue to use the LEO software licensed under the SBS License only in those States with SBS licenses in effect as of the date of Aithent's written notice of breach to the NAIC; however, LEO may not thereafter be sub-licensed to any other States.

CONFIDENTIAL                    Attorney's Eyes Only                    AIT_E00327433
Case 4:11-cv-00173-GAF   Document 89-3   Filed 01/14/13   Page 10 of 36

(d) in the event a fourth such breach of the Agreement occurs within two (2) years of the third breach that remained uncured at the expiration of the prescribed cure period and such fourth breach is not cured within ten (10) days from the receipt of written notice of such breach, the NAIC shall promptly pay to Aithent liquidated damages in the amount of fifty percent (50%) of the SBS Royalty Payment which was paid (or should have been paid) by the NAIC to Aithent for the prior quarter. In addition, the perpetual and irrevocable nature of the SBS License shall immediately and automatically terminate as of the date of Aithent's written notice of breach to the NAIC. The NAIC may continue to use the LEO software licensed under the SBS License, however, such SBS License shall terminate with respect to each State with SBS licenses then in effect at the completion of each such State's then-current SBS license term.

(e) The SBS License restrictions set forth above shall apply regardless of the NAIC's cure of, or failure to cure, any breach of the type contemplated by this Section 7(d).

(f) In the event that the NAIC's failure to pay is the result of a good faith dispute ("Good Faith Dispute") and the NAIC has timely paid all undisputed SBS Royalty Payments then due and owing to Aithent, the SBS License restrictions set forth above shall not apply, and the Parties shall attempt to resolve such Good Faith Dispute informally, provided that within ten (10) days of the resolution of such Good Faith Dispute the NAIC pays to Aithent such SBS Royalty Payments as may then be due and owing to Aithent as the result of such resolution, in which case no breach shall be deemed to have occurred for the purposes of this Section 7(d). The NAIC's failure to so pay shall be deemed a breach under the terms of this Section 7(d).

Notwithstanding the foregoing Section 7(d)(1)(f), if the Good Faith Dispute is not informally resolved, Aithent, prior to exercising its rights to payment and to restrict the SBS License as stated above, shall conduct an examination of the NAIC's relevant business and financial records in accordance with Section 6(c) to substantiate the payment dispute. If the examination shows that the NAIC owes payment to Aithent, the NAIC shall have ten (10) days after the completion and disclosure of the results of the examination within which to make such payment. The payment of costs for the examination shall be paid in accordance with the terms of Section 6(c). If the NAIC fails to make payment of all monies due and owing as a result of the examination within said ten (10) days, such failure to pay shall be deemed a material breach under this Section 7(d).

(2) If the breaching Party is Aithent,

CONFIDENTIAL Attorney's Eyes Only AIT_E00327434

(a) on the first such breach of the Agreement, Aithent shall have thirty (30) days to cure from receipt of a written notice within which to cure the breach. No additional penalty other than those set forth herein for late payments shall attach if such breach is cured within the prescribed period.

(b) if such breach is not cured within the prescribed period, or in the event a second breach of the Agreement occurs within two (2) years of the first breach that remained uncured at the expiration of the prescribed cure period and such second breach is not cured within twenty (20) days from the receipt of written notice, the NAIC may immediately terminate Aithent's exclusivity rights under the Agreement. Aithent may continue to use the NAIC materials licensed under the Aithent License, however, the exclusivity provisions of the Aithent License shall immediately and automatically terminate as of the NAIC's written notice of breach to Aithent and Aithent shall remain obligated to pay all Referral Royalty Payments as they come due under this Agreement.

(c) in the event a third breach of the Agreement occurs with two (2) years of the second breach that remained uncured at the expiration of the prescribed cure period and such third breach is not cured within ten (10) days following receipt of written notice, Aithent may continue to use the NAIC materials licensed under the Aithent License for only for those Aithent customers with agreements with Aithent in effect as of the date of the NAIC's written notice of breach to Aithent; however, the materials comprising the Aithent License may not thereafter be provided to any other Aithent customers.

(d) in the event a fourth breach of the Agreement occurs within two (2) years of the third breach that remained uncured at the expiration of the prescribed cure period and such fourth breach is not cured within ten (10) days following receipt of written notice, Aithent shall also promptly pay to the NAIC liquidated damages in the amount of fifty percent (50%) of the Referral Royalty Payment which was paid (or should have been paid) by Aithent to the NAIC in the prior quarter. In addition, the perpetual and irrevocable nature of the Aithent License shall immediately and automatically terminate as of the date of the NAIC's written notice of breach to Aithent. Aithent may continue to use the materials licensed under the Aithent License, however, such Aithent License shall terminate with respect to each Aithent customer with agreements utilizing such materials then in effect at the completion of each such customer's then-current agreement.

CONFIDENTIAL                    Attorney's Eyes Only                    AIT_E00327435

(e) The Aithent License restrictions set forth above shall apply regardless of Aithent's cure of, or failure to cure, any breach of the type contemplated by this Section 7(d).

(f) In the event that Aithent's failure to pay is the result of a Good Faith Dispute and Aithent has timely paid all undisputed Referral Royalty Payments then due and owing to the NAIC, the Parties shall attempt to resolve the Good Faith Dispute informally, provided that within ten (10) days of the resolution of such Good Faith Dispute Aithent pays to the NAIC such Referral Royalty Payments as may then be due and owing to the NAIC as the result of such resolution, in which case no breach shall be deemed to have occurred for the purposes of this Section 7(d). Aithent's failure to so pay shall be deemed a breach under the terms of Section 7(d).

Notwithstanding the foregoing Section 7(d)(2)(f), if the Good Faith Dispute is not informally resolved, the NAIC, prior to exercising its rights to payment and to terminate the Agreement, shall conduct an examination of Aithent's relevant business and financial records in accordance with Section 6(c) to substantiate the payment dispute. If the examination shows that Aithent owes payment to the NAIC, Aithent shall have ten (10) days after the completion and disclosure of the results of the examination within which to make such payment. The payment of costs for the examination shall be paid in accordance with the terms of Section 6(c). If Aithent fails to make payment of all monies due and owing as a result of the examination within said ten (10) days, such failure to pay shall be deemed a material breach under this Section 7(d).

e. Upon termination of this Agreement for a material, uncured breach, the licenses granted hereunder to the breaching Party shall immediately terminate; however, the licenses granted to the non-breaching Party shall continue provided the non-breaching party continues to fulfill its obligations under the license granted to it as set forth herein. Termination or expiration of this Agreement for any reason other than a material, uncured breach shall have no effect on the licenses granted to each Party herein or the Parties' respective payment obligations to each other, provided that the Parties continue to meet their respective ongoing obligations under the licenses granted to them as set forth herein. Notwithstanding the foregoing, upon termination or expiration of this Agreement for any reason, the Parties shall cease to have any obligations to each other with respect to the provision of source code for upgrades and modifications to LEO and SBS.

8. **TRADEMARKS; COPYRIGHTS**

a. During the term of this Agreement, the NAIC shall at all times display the "Powered by Aithent" symbol, Aithent trademark, logo and trade name

CONFIDENTIAL          Attorney's Eyes Only          AIT_E00327436

("Aithent Marks") on SBS and at a minimum, shall include the Aithent Marks on the SBS splash screen and log-in screens. The NAIC shall be licensed to use the Aithent Marks and the LEO trademark and logo in strict accordance with Aithent Trademark Usage Guidelines to be provided to the NAIC by Aithent not later than thirty (30) days following the Effective Date, as such Aithent Trademark Usage Guidelines may be changed from time to time at the sole discretion of Aithent.

b. During the term of this Agreement, Aithent shall be licensed to use the NAIC (and as appropriate, the NIPR) trademark, logo and trade name and the SBS trademark and logo and such other commercial indicia as the NAIC may require (collectively, the "NAIC Marks") in all instances where Aithent shall use SBS. All such use of the NAIC Marks shall be in strict accordance with the NAIC Trademark Usage Guidelines to be provided to Aithent by the NAIC not later than thirty (30) days following the Effective Date, as such NAIC Trademark Usage Guidelines may be changed from time to time at the sole discretion of NAIC.

c. Neither Party shall, at any time, use, register or cause any third party to use or register any name, trademark, service mark, logo or symbol which may be confusingly similar to the other Party's trademarks, trade names, logos, symbols or product names. The licenses issued hereunder shall in no way convey to the licensee Party any right, title or ownership in the Marks of the Licensor Party.

d. In displaying the NAIC's copyright notices and designation of SBS, the NAIC shall at all times include appropriate and complete copyright information with respect to LEO components and modifications included in SBS by indicating that a portion of SBS includes copyrighted material of Aithent on, at a minimum, the "About" display or its equivalent. Aithent shall provide the NAIC from time to time with such updated copyright information as appropriate; the NAIC shall promptly cause the content of such updated copyright information to be included in the copyright notice of SBS as set forth above.

9. **WARRANTY OF TITLE AND NON-INFRINGEMENT AND INDEMNIFICATION**

a. Each Party represents and warrants that (i) the software and documentation it provides to the other Party hereunder will not, as of the date of delivery of such software and documentation, violate the intellectual property rights of any third party under U.S. patent, copyright, trademark or trade secret laws; and (ii) it has full power and right to enter into this Agreement, to license said software and documentation and to grant the exclusive rights to the other Party as set forth herein.

CONFIDENTIAL　　　　　Attorney's Eyes Only　　　　　AIT_E00327437

Case 4:11-cv-00173-GAF   Document 89-3   Filed 01/14/13   Page 14 of 36

b.     Each Party will indemnify and hold harmless the other Party (and, in the case of the NAIC, NIPR), their employees and agents from all loss, cost, liability, and expense, including actual attorneys' fees, arising out of any claim that any software or documentation provided by such Party and, as used within the scope of this Agreement, infringes any patent, copyright, trade secret, or other proprietary right of a third party.

c.     The NAIC (and its affiliate, NIPR) shall defend, indemnify and hold harmless Aithent from and against any and all claims, suits, actions, losses, damages, liabilities, costs and expenses (including reasonable attorneys' fees and court costs) brought or claimed by third parties against or from Aithent resulting from or relating to any breach by the NAIC (or its affiliate, NIPR) of its obligations, duties, responsibilities, representations or warranties under any agreement between the NAIC (or its affiliate, NIPR) and its customers with respect to the licensing, or provision of SBS or any SBS-related services.

d.     Upon receipt of a claim arising under this Section, the indemnified Party shall (i) promptly provide the indemnifying Party prompt written notice of the claim; (ii) provide all reasonable assistance at the indemnifying Party's expense to defend against the claim; (iii) allow the indemnifying Party to control the defense and settlement of the claim provided that the indemnifying Party does not enter into any settlement or compromise that imposes any obligation or liability upon the indemnified Party (and in the case of the NAIC, NIPR), without the prior written consent of the indemnified Party. The indemnified Party shall have the right to retain its own legal counsel and participate in the defense of the claim at its sole expense.

e.     In the event the use of any software or documentation provided by a Party is permanently enjoined for any reason, such Party shall, at its sole cost, either (i) modify the software or documentation to avoid infringement; or (ii) procure the right for the other Party to continue to use such software or documentation. If neither remedy is reasonably available, the non-infringing Party may terminate this Agreement as if for a material, uncured breach.

f.     Aithent shall have no obligation under this Section for or with respect to claims, actions, or demands alleging infringement of its software or documentation to the extent such claims, actions, or demands arise as a result of (i) the combination of noninfringing items supplied by Aithent with any items not supplied by it; or (ii) modifications to LEO made by, at the direction of, or on behalf of the NAIC.

10.    **DISCLAIMER OF WARRANTIES AND LIMITATION OF LIABILITES AND REMEDIES; FORCE MAJEURE**

CONFIDENTIAL         Attorney's Eyes Only         AIT_E00327438

## a. Disclaimer of Warranties.

Aithent represents and warrants that the Delivered Version and any version of LEO delivered pursuant to Section 4 (collectively, "Versions of LEO") shall perform in accordance with its specifications. Aithent does not, however, warrant that the NAIC's or NIPR's use of the Versions of LEO will be error-free or uninterrupted. Aithent will, at its own cost and expense and as its sole obligation (and NAIC and NIPR's exclusive remedy for any breach of this warranty), use its commercially reasonable efforts to promptly correct any reproducible error in the Versions of LEO that NAIC reports to Aithent in writing.

OTHER THAN AS EXPRESSLY PROVIDED IN THE AGREEMENT, AITHENT MAKES NO WARRANTY OR PROMISE, EITHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, WITH RESPECT TO THE VERSIONS OF LEO INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.

To the extent that a warranty may not be disclaimed under applicable law, the scope and duration of such warranty shall be the minimum permitted under such law. The NAIC acknowledges that it has relied on no warranties of Aithent other than the express warranties set forth herein, in entering into this Agreement.

## b. LIMITATION OF LIABILITY.

AITHENT SHALL NOT BE LIABLE FOR AND THE NAIC EXPRESSLY WAIVES ANY CLAIM FOR ANY INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOST SALES, LOST PROFIT, BUSINESS INTERRUPTION, LOSS OF DATA OR LOSS OF OR INABILITY TO USE ANY COMPUTER, SYSTEM, SOFTWARE OR COMPONENT), SUFFERED BY THE NAIC OR ANY THIRD PARTY AS A RESULT OF SUCH PARTY'S RELIANCE ON THE VERSIONS OF LEO, SBS, ANY MODIFICATIONS THERETO, OR ANY SERVICES PERFORMED BY AITHENT UNDER THE MASTER SERVICES AGREEMENT, WHETHER THE SAME ARE INCURRED OR SUFFERED BY THE NAIC OR ANY THIRD PARTY, AND WHETHER BASED IN CONTRACT, TORT OR OTHERWISE.

THE NAIC SHALL NOT BE LIABLE FOR AND AITHENT EXPRESSLY WAIVES ANY CLAIM FOR ANY INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOST SALES, BUSINESS INTERRUPTION, LOSS OF DATA OR LOSS OF OR INABILITY TO USE ANY COMPUTER, SYSTEM, SOFTWARE OR

CONFIDENTIAL

Attorney's Eyes Only

AIT_E00327439

COMPONENT), SUFFERED BY AITHENT OR ANY THIRD PARTY AS A RESULT OF SUCH PARTY'S RELIANCE ON THE VERSIONS OF LEO, SBS, ANY MODIFICATIONS THERETO, OR ANY SERVICES PERFORMED BY THE NAIC, WHETHER THE SAME ARE INCURRED OR SUFFERED BY AITHENT OR ANY THIRD PARTY, AND WHETHER BASED IN CONTRACT, TORT OR OTHERWISE.

IN ADDITION, EXCEPT FOR EACH PARTY'S INDEMNIFICATION OBLIGATIONS HEREUNDER, THE AGGREGATE AMOUNT OF EACH PARTY'S LIABILITY TO THE OTHER PARTY OR ANY THIRD PARTY UNDER ANY CLAIM FOR LOSS OR LIABILITY BASED UPON, ARISING OUT OF, RESULTING FROM, OR IN ANY WAY CONNECTED WITH THE PERFORMANCE OR BREACH OF THIS AGREEMENT SHALL IN NO CASE EXCEED (A) WITH RESPECT TO AITHENT, THE SUMS RECEIVED HEREUNDER BY AITHENT FROM THE NAIC FOR THE SIX (6) MONTHS PRECEDING THE EVENT GIVING RISE TO SUCH CLAIM APPLICABLE TO THE STATE FOR WHICH SUCH CLAIM ARISES AND (B) WITH RESPECT TO THE NAIC, THE SUMS RECEIVED BY AITHENT AND DUE AND OWING HEREUNDER BY THE NAIC FOR THE SIX (6) MONTHS PRECEDING THE EVENT GIVING RISE TO SUCH CLAIM APPLICABLE TO THE STATE FOR WHICH SUCH CLAIM ARISES.

11.   **NON-COMPETITION**

Aithent shall not market, sell, distribute or otherwise deliver LION to any person or organization within the Insurance Sector. Aithent may continue to support, service and customize LION for the existing customers identified in Exhibit E. In addition, Aithent may provide support, maintenance and customization services for any such customers identified in Exhibit E who elect to license LEO and not SBS.

12.   **CONFIDENTIALITY**

Each Party acknowledges that it will have access to proprietary or otherwise confidential information of the other ("Confidential Information"). Aithent's Confidential Information shall include (without limitation) (a) the LEO software (including modifications thereto) including but not limited to the source code, (b) the tools, methodology, know-how, ideas, techniques, procedures, documents and designs that Aithent uses or employs in the delivery of LEO (including modifications thereto) and implementation, maintenance and enhancements to LEO and SBS and (c) the terms and conditions of this Agreement; and (d) all other Aithent information which would reasonably be considered confidential.  The NAIC's Confidential Information shall include (without limitation) (v) the SBS software including but not limited to its source code; (w) SBS's specifications, performance requirements, processes, data; (x) the NAIC's tools, methodology, know-how, ideas, techniques, procedures, documents and designs that NAIC provides to Aithent to facilitate the delivery of LEO and SBS and the

CONFIDENTIAL                    Attorney's Eyes Only                    AIT_E00327440

implementation, maintenance and enhancements to LEO and SBS; (y) client or member information and (z) all other NAIC information which would reasonably be considered confidential.

A disclosing Party's Confidential Information shall not include, however, information that:

    i.    is or becomes a part of the public domain through no act or omission of the other Party;

    ii.    was in the other Party's lawful possession prior to the disclosure thereof by the disclosing Party and had not been obtained by the other Party either directly or indirectly from the disclosing Party;

    iii.    is lawfully disclosed to the other Party by a third party that is not subject to any restriction on disclosure;

    iv.    is independently developed by the other Party without reference to the disclosing Party's Confidential Information;

    v.    is required to be disclosed by the other Party pursuant to any law, rule or regulation, governmental authority, duly authorized subpoena, court order or administrative process;

    provided, however, that the other Party must provide written notice to the disclosing Party prior to such disclosure and cooperate with the disclosing Party to facilitate its obtaining confidential treatment of such information required to be disclosed; or is approved (by prior written consent) for disclosure by the disclosing Party.

Each Party agrees, during the term of this Agreement and for a period of two (2) years thereafter, (A) to hold the Confidential Information of the other Party in strict confidence and to use such Confidential Information only in connection with the performance of its obligations under this Agreement, (B) not to make any copies of such Confidential Information or any portions thereof without the express written permission of the other Party, (C) not to disclose such Confidential Information or any part thereof to any person outside the Party's business organization for any purpose, (D) to limit dissemination of such Confidential Information within that Party's business organization to persons who have a need to see the Confidential Information in connection with the performance of its obligations under this Agreement and (E) if requested, to return such Confidential Information and any copies thereof to the other Party upon the completion of the Services to which such Confidential Information relates, or at such later date as the other Party may require. Notwithstanding the foregoing, each Party shall be entitled to retain a set of its working papers, even if such working papers contain Confidential Information of the other Party. For purposes of this paragraph, "business organization" means a Party's parent entities, subsidiaries and other affiliated entities.

CONFIDENTIAL      Attorney's Eyes Only      AIT_E00327441

Notwithstanding the foregoing and subject to the terms of this Agreement, the NAIC hereby grants Aithent a perpetual, worldwide, irrevocable, non-exclusive license to use NAIC's Confidential Information, provided the Confidential Information is solely limited to information regarding the automated processes developed or used by the NAIC to support the regulatory framework of the Insurance Sector, for the sole purpose of incorporating into LEO and such of Aithent's other proprietary software as Aithent deems appropriate and necessary to develop, use, and license solely to insurance regulatory entities located outside the United States. Except as provided in Section 3, this limited license does not permit Aithent to use NAIC's Confidential Information to provide software or services to third parties other than insurance regulatory entities located outside of the United States. Except as set forth herein and as may be provided in a separate agreement signed by each of Aithent and the NAIC specifically referencing such Confidential Information incorporated into LEO, NAIC agrees that it shall have no right, title or interest in or to any modifications to LEO based on such Confidential Information.

## 13. DISPUTE RESOLUTION

Any dispute, controversy or claim arising under, out of, in connection with or in relation to this Agreement, or the breach, termination, validity or enforceability of any provision hereof (a "Dispute"), if not resolved informally through negotiation between the Parties, will be submitted to non-binding mediation. The Parties will mutually determine who the mediator will be from a list of mediators knowledgeable in the subject matter hereof and obtained from the American Arbitration Association (the "AAA") office located in the city determined as set forth below in this Section. If the Parties are unable to agree on the mediator, the mediator will be selected by the AAA. If any Dispute is not resolved through mediation, the Parties shall have a period of one year from the date of the last mediation to bring a lawsuit or action in federal district court in the city determined as set forth below.

Any negotiation, mediation or lawsuit pursuant to this Section will take place or be filed in New York, New York, if initiated by the NAIC, and in Kansas City, Missouri, if initiated by Aithent. With regards to any negotiation or mediation, each Party will bear its own costs and expenses with respect to any negotiation or mediation, including one-half of the fees and expenses of the mediator, if applicable. In the event a lawsuit results in a judgment (other than settlement), the prevailing Party shall be entitled to an award of reasonable attorneys' fees and expenses.

The Parties agree that the provisions of this Section are a complete defense to any suit, action or other proceeding instituted in any court or before any administrative tribunal with respect to any Dispute. Nothing in this Section prevents the Parties from exercising their right to terminate this Agreement in accordance with Section 7.

CONFIDENTIAL
Attorney's Eyes Only
AIT_E00327442

## 14. GOVERNING LAW

By adoption of the Parties, the State of New York is deemed to be the place of contracting and by agreement of the Parties, any claim or controversy relating to this Agreement, its interpretation, performance or validity shall be construed and governed in accordance with the laws of the State of New York, without regard to its choice of laws rules.

## 15. NO ASSIGNMENT

Neither this Agreement nor any of the rights granted hereunder shall be transferable or assignable by either Party without the prior written consent of the other Party. However, this Agreement shall be assignable by Aithent to the purchaser or transferee ("Successor") of that portion of Aithent's business to which this Agreement relates to the extent that Aithent deems necessary to effectuate the disposition of such portion of its business. Provided the Successor agrees in writing to be bound to the rights and obligations of this Agreement and provides reasonable evidence to the NAIC that it has the financial and technical resources to fulfill the obligations of this Agreement, this Agreement shall be binding upon and inure to the benefit of the assignee and Aithent shall have no further obligations or liability hereunder.

## 16. NOTICES

All notices required or permitted to be given hereunder shall be in writing. Except as otherwise expressly stated in this Agreement, such notices shall be deemed to have been properly given (a) on the date delivered, if personally delivered, (b) one (1) business day after the date sent by facsimile, with automatic confirmation by the transmitting machine showing that the proper number of pages were transmitted without error (with a hard copy of such pages mailed promptly by United States postage-prepaid first class mail to the recipient of such telecopy transmission), (c) five (5) business days after mailing, if mailed by registered or certified mail, postage prepaid, with return receipt requested and proof of sending provided (but only if the receiving party is located within the United States) and (d) two (2) business days after mailing, if sent by recognized overnight express courier service, charges prepaid, with "next day" or "next business day" service specified and proof of sending provided (if the receiving party is within or outside the United States), in each case to the receiving party at its address or facsimile number set forth below (or to such other address or facsimile number as the receiving party may designate in accordance with this section):

> N. Venu Gopal, Chief Executive Officer
> Aithent, Inc.
> 17 State Street
> New York, New York 10004
> Fax No.: 212.271.6368
>
> with a copy to:

CONFIDENTIAL      Attorney's Eyes Only      AIT_E00327443

William E. Bandon, III, Esq.
Brown Raysman Millstein Felder & Steiner LLP
900 Third Avenue
New York, NY 10022-4728
Fax: 212.895.2900


Chief Information Officer
National Association of Insurance Commissioners
2301 McGee Street
Suite 800
Kansas City, Missouri 64108-2604
Fax: 816.783.8053

with a copy to:

General Counsel
National Association of Insurance Commissioners
2301 McGee Street, Suite 800
Kansas City, Missouri 64108
Fax: 816.783.8054


## 17. INDEPENDENT RELATIONSHIP OF THE PARTIES

Nothing in this Agreement shall be construed to constitute or appoint either Party as a partner, joint venturer, agent or representative of the other Party for any purpose whatsoever, or to grant to either Party any rights or authority to assume or create any obligation or responsibility, express or implied, for or on behalf of or in the name of the other, or to bind the other in any way or manner whatsoever.

## 18. WAIVER

No provision of this Agreement shall be waived and no breach excused unless the waiver or consent is in writing and is signed by the Party that is claimed to have waived or consented. No course of dealing or omission or delay on the part of either Party hereto in asserting or exercising any right hereunder shall constitute or operate as a waiver of any such right.

## 19. SEVERABILITY; CONFLICT

If any provision herein is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force without being invalidated in any way. In

CONFIDENTIAL    Attorney's Eyes Only    AIT_E00327444

the event of any direct conflict between the terms of this Agreement and the terms of the Master Services Agreement, the terms of this License shall govern.

## 20. FORCE MAJEURE

Excluding their respective payment obligations hereunder, neither Aithent nor the NAIC shall be held responsible for, nor deemed to be in default under this Agreement because of, any delay or failure in its performance if such delay or failure is the result of causes beyond its reasonable control (provided such causes do not result from the acts or omissions of such Party or its officers, managers, employees or personnel). Such causes shall include (without limitation) acts of God, fire, flood, earthquake, severe weather, transportation disruption, communications failure, failure of electronic or mechanical equipment, telephone or other interconnect problem, Internet problem, unauthorized access, theft, operator error, strike or other labor dispute, war, civil disruption, insurrection or any other cause beyond the reasonable control of such party (all such causes collectively referred to herein as "Force Majeure"). The Party affected by a Force Majeure shall, upon giving prompt written notice to the other Party thereof, be entitled to suspend its performance hereunder on a day-to-day basis to the extent of the prevention, restriction or interference caused by such Force Majeure; provided, however, that the Party affected shall at all times use its commercially reasonable efforts to avoid or remove such prevention, restriction or interference and to minimize the consequences thereof. The Party affected shall resume its performance immediately upon elimination or removal of such Force Majeure or its effects. To the extent the Party affected by such Force Majeure is entitled to suspend its performance, the Party not affected by such Force Majeure shall also be entitled to suspend its performance. In the event a Force Majeure continues for more than sixty (60) days, the Party not seeking relief under this provision may terminate the Agreement immediately, and the provisions of Section 7 shall apply.

## 21. HEADINGS

Headings are for reference purposes only and in no way define, limit, construe or describe the extent of such section.

## 22. SURVIVAL OF PROVISIONS

The following provisions shall survive termination of this Agreement: 1, 2, 3 (with respect to the irrevocable, perpetual and exclusive nature of Aithent License and the SBS License), 5, 6, 7 (with respect to royalty payments, audits, termination and license restrictions for non-payment), 8 (with respect to copyright notices), 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, and 24.

## 23. COUNTERPARTS

This Agreement may be executed in counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same Agreement.

CONFIDENTIAL                    Attorney's Eyes Only                    AIT_E00327445

## 24. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the Parties on this subject matter, and supersedes all prior agreements, understandings and proposals, oral or written, between the Parties. No amendments or modifications to this Agreement shall be valid unless in writing and signed by both Parties.

**[The remainder of this page is intentionally left blank.]**

CONFIDENTIAL
Attorney's Eyes Only
AIT_E00327446

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the day and year first above written.

NATIONAL ASSOCIATION OF
INSURANCE COMMISSIONERS

AITHENT, INC.

_Catherine J. Weatherford_
Signature

_N.V.-_
Signature

Catherine J. Weatherford
Printed Name

N. Vasu Gopal
Printed Name

Executive Vice President
Title

CEO
Title

7/17/02
Date

July/17/ 2002
Date

CONFIDENTIAL                    Attorney's Eyes Only                    AIT_E00327447

## EXHIBIT A

The following Electronic Transactions, as this term is defined in the Agreement, will be included in SBS v. 1.0 and subject to Royalty Payment as set forth in Section 6(a) of the Agreement.

### Type of Electronic Transaction

Non-Resident Licensing
Non-Resident Licensing Renewals
Appointment Renewals
Resident Licensing
Resident Licensing Renewals
Continuing Education Transactions

This Exhibit may be amended from time to time upon mutual written agreement of the Parties.

CONFIDENTIAL                         Attorney's Eyes Only                         AIT_E00327448

Case 4:11-cv-00173-GAF   Document 89-3   Filed 01/14/13   Page 25 of 36

## EXHIBIT B

### SPECIFICATION AND REQUIREMENTS FOR LEO

#### LEO – Licensing Environment Online

| SYSTEM MODULE | FUNCTIONS | LEO Avail | COMMENTS |
|---|---|---|---|
| Interface Entry | Login - Existing user | X | Create new subscribers – individual, business entity, company |
| | Login - New user | X | LEO will require some change to accept only one name. |
| Fee Payment Methods | Payment Options | X | Interfaces with Verisign. |
| | Choose License type and line of authority | X | |
| | Calculate State Fees | X | LEO captures a Line qualification fee. LEO also calculates fees for duplicate and temporary licenses |
| Enter Uniform Individual & Business Entity Resident & Non-Resident Application | Demographics | X | LEO does not require resident address, mailing address, citizenship. |
| | Affiliations | X | LEO may refer to this as Member List. Feature was unavailable to test in LEO |
| | Employment History | | Not available in LEO |
| | Background Info | | Not available in LEO |
| | Certification & Attestation | | Not available in LEO |
| | Attachments | | Not available in LEO |
| | Company Search | X | LEO provides company search based on company name, license and number. Able to retrieve dozens of companies in result set. |

CONFIDENTIAL     **Attorney's Eyes Only**     AIT_E00327449

| SYSTEM MODULE | FUNCTIONS | LEO Avail | COMMENTS |
|---|---|---|---|
| | Company Appointment | X | LEO requires that an appointment be assigned when applying for a license. |
| | ASI Details | X | LEO captures, Exam #, Exam date, Exam Center, Part-I Score, Part-II Score, School Code, Result. No active interface with ASI. |
| | Preparer's Information | | Not available in LEO |
| | Data Validation/ Completeness Checks | X | Has required fields and performs data validations on specific fields. |
| | E-Mail | X | LEO sends an email to licensee when license application is submitted. The email contains a license number and URL to review the license. |
| Administrator | Change own Password | X | |
| | Subscription | X | |
| | Modify Profile (update demographics) | X | |
| | Manage Subscription | X | |
| Producer updates | My License(s) | X | |
| | Original Application | X | |
| | Duplicate License | X | |
| | Letter of Certification | X | |
| | Renewal Application | X | |
| | Producer Address | X | |
| | Line Addition | X | |
| | Line Deletion | X | |

CONFIDENTIAL Attorney's Eyes Only AIT_E00327450

| SYSTEM MODULE | FUNCTIONS | LEO Avail | COMMENTS |
|---|---|---|---|
| | Company Appointment | X | |
| | Company Termination | X | |
| | Member Appointment | X | |
| | Member Termination | X | |
| | Report Browser | X | |
| | Subscription Activity Report | X | |
| Companies | | X | LEO allows states to maintain company related activities such as appointments. |
| Pre-licensing/ | | X | This module is undergoing quality assurance. Current schedule is to have module ready for production 9/30/2002. Will be provided to NAIC at no cost. |
| Continuing Education | | X | LEO CE allows automated maintenance of CE related entities. Current schedule is to have module ready for production 9/30/2002. Will be provided to NAIC at no cost. |
| | Login | X | User id and password are required for LEO. |
| Original App | Entry | X | |
| | Audit | X | |
| | Approval | X | |
| Renewal App | Entry | X | |
| | Audit | X | |
| | Approval | X | |
| Lines/ Qualification | Addition | X | |
| | Addition Approval | X | |

CONFIDENTIAL      Attorney's Eyes Only      AIT_E00327451

| SYSTEM MODULE | FUNCTIONS | LEO Avail | COMMENTS |
|---|---|---|---|
| | Deletion | X | |
| | Deletion Approval | X | |
| Company Appointment | Appointment | X | |
| | Termination | X | |
| Company Appointment Renewals | Appointment Renewals | | Not available in LEO |
| Member | Appointment | X | |
| | Appointment Approval | X | |
| | Termination | X | |
| | Termination Approval | X | |
| Admin | Class/Lines | X | |
| | Class Line/Qualification | X | |
| | Class/Lines – Section/Line | X | |
| | Fee Maintenance | X | |
| | Partnership Type | X | |
| | Combining Records | | Function not available in LEO |
| | Entity Deletion | | Function not available in LEO |
| Duplicate License | Request | X | |
| | Approval | X | |
| Temporary License | | | Function not available in LEO |
| Blue Card | | X | To be delivered at a later date. |
| Reports | Producer Licenses | X | |
| | Active Agent List | X | |
| | Captive Agent List | X | |
| | Daily License Issued | X | |
| | Total License Count | X | |

CONFIDENTIAL Attorney's Eyes Only AIT_E00327452

| SYSTEM MODULE | FUNCTIONS | LEO Avail | COMMENTS |
|---|---|---|---|
| | Other Reports | | To be delivered at a later date. |
| FOIL | (Freedom of information Licensing) | | Function not available in LEO |
| Administration | Receipt Details | X | |
| | Address Type | X | |
| | Country | X | |
| | State | X | |
| | County | X | |
| | Cash Sheet | X | |
| | PIN Interface | | To be tested with NAIC |
| FEE | Fee Maintenance | X | |
| | Combination Type Linking | X | |
| | Combination Type | X | |
| Process Pending Licenses | View License Information | X | |
| | Demographic Data Update | X | LEO provides for update by external producer and state admin. |
| | Change License Status | X | |
| | Update checkboxes for pending reasons | X | LEO approval checks – Qualification checked, FPRC Checked, Fee Checked, and BlueCard Verified. |
| | Update Checkbox for Background Questions | | Function not available in LEO |
| Workflow | | X | |
| History/Audit Trail | | X | LEO stores prior demographics and other historical licensing information on producers and companies in the system. |
| Search for a License/Agent | | X | |
| Print License | | X | |

CONFIDENTIAL

Attorney's Eyes Only

AIT_E00327453

| SYSTEM MODULE | FUNCTIONS | LEO Avail | COMMENTS |
|---|---|---|---|
| Notification | Notification via e-mail and/or letters | X | Part of Aithent's "go-back" technology. Current schedule is to have module ready for production 8/25/2002. Will be provided to NAIC at no cost. |
| Batch Print | Ability to print reports, licenses and letters in a batch job | | Function not available in LEO. Aithent will show NAIC how reports can be created in LEO and then used to batch print information outside of LEO. |
| Help and User documentation | | | Sample documentation has been delivered to NAIC. To be delivered at a later date at no cost to the NAIC. |
| Complaints | | | Function not available in LEO |
| Browser | | X | LEO runs only on Internet 5.5 and greater. It does not support Netscape. |

CONFIDENTIAL  Attorney's Eyes Only  AIT_E00327454

## EXHIBIT C
## NAIC AND AITHENT BAD DEBT AND REFUND POLICIES

### NAIC

The following is the written policy of the NAIC and its affiliate, NIPR, with regards to the handling of bad debt and refunds:

It is the policy of the NAIC, and therefore the policy of its non-profit affiliate, NIPR, to pursue the collection of outstanding customer balances prior to them becoming aged to 60 days. Monthly statements of outstanding balances are sent to all customers. In the event a customer has not paid an invoice prior to it becoming 60 days or older, a more direct approach to customer payment is invoked.

Collection efforts on accounts of 60 days or more begin with correspondence and phone calls from the sales area. If these efforts fail the NAIC Credit and Collections Administrator, which was added as a full time accounts receivable management resource to the Accounting Department in 2001, takes on the task of collection. If these attempts for collection fail, though they rarely do, the account is turned over to the Legal Division who contacts the customer via written correspondence and demands payment. During this collection process, a cost/benefit assessment for the use of a collection agency is also performed. These processes have worked well for the NAIC and NIPR. Only after all of these efforts have failed does an account get written off.

Bad debt write-offs generally result from court orders, bankruptcy, liquidation, etc. When these documents are received the account is generally considered to be uncollectible and is written off but only after the proof-of-claim for the amount owed has been filed. These proofs-of-claim are monitored by the NAIC's Legal Division.

Refunds to NAIC/NIPR customers may result from (1) an erroneous invoice to the customer, (2) an overpayment of an invoice by the customer, or (3) billing system errors, data errors and/or system performance problems. Such refunds will be approved and processed by the NAIC/NIPR Manager with appropriate authorization level and the NAIC Accounting Department upon a review of the customer's request for refund and a determination that the customer should not pay for the services invoiced.

### AITHENT

The following is the written policy of Aithent with regard to the handling of bad debt and refunds:

It is the policy of Aithent to pursue the collection of outstanding customer balances prior to them becoming aged to 60 days. Monthly statements of outstanding balances are sent to all customers. In the event a customer has not paid an invoice prior to it becoming 60 days or older, a more direct approach to customer payment is invoked.

CONFIDENTIAL
Attorney's Eyes Only
AIT_E00327455

Collection efforts on accounts of 60 days or more begin with correspondence and phone calls. If these efforts fail the Accounting Department takes on the task of collection. If these attempts for collection fail, the account is turned over to legal counsel, who contacts the customer via written correspondence and demands payment. During this collection process, a cost/benefit assessment for the use of a collection agency is also performed. Only after all of these efforts have failed does an account get written off.

Bad debt write-offs generally result from court orders, bankruptcy, liquidation, etc. When these documents are received the account is generally considered to be uncollectible and is written off but only after the proof-of-claim for the amount owed has been filed.

Refunds to Aithent customers may result from (1) an erroneous invoice to the customer, (2) an overpayment of an invoice by the customer, or (3) billing system errors, data errors and/or system performance problems. Such refunds will be approved and processed by the Aithent Manager with appropriate authorization level and upon a review of the customer's request for refund and a determination that the customer should not pay for the services invoiced.

CONFIDENTIAL      Attorney's Eyes Only      AIT_E00327456

## EXHIBIT D
## STATE INSURANCE DEPARTMENTS

The following State Insurance Departments are processing electronic appointments and terminations utilizing a system other than LION prior to execution of this Agreement:

1. Alaska
2. Alabama
3. Arkansas
4. California
5. Connecticut
6. District of Columbia
7. Georgia
8. Hawaii
9. Idaho
10. Iowa
11. Kansas
12. Kentucky
13. Louisiana
14. Maryland
15. Michigan
16. Minnesota
17. Missouri
18. Montana
19. North Carolina
20. North Dakota
21. Nebraska
22. New Hampshire
23. New Jersey
24. New York
25. Nevada
26. Ohio
27. Oklahoma
28. Oregon
29. Pennsylvania
30. South Dakota
31. Tennessee
32. Texas
33. Utah
34. Virginia
35. Wisconsin
36. West Virginia
37. Wyoming

CONFIDENTIAL          Attorney's Eyes Only          AIT_E00327457

## EXHIBIT E
## LION USERS

As of the effective date of this Agreement, the following State Insurance Departments are using LION:

1. New York
2. Arkansas

CONFIDENTIAL Attorney's Eyes Only AIT_E00327458

## EXHIBIT F
## FORMAT FOR ROYALTY PAYMENT STATEMENTS

NAIC/AITHENT Licensing Agreement
Royalty Payment Statement
For the Period Ended:

| State | License Fee Collected (1) | Transaction Fee Collected (2) | Transaction Type | Net Revenue Collected During Period | Royalty Amount |
|---|---|---|---|---|---|
| {A} | {B} | {C} | {D} | {B} + {C} | XX |
| | | | Subtotal | | XX |
| | | | Less: | | |
| | | | Fee Refunds (1) | | XX |
| | | | Total SBS Royalty Payment Enclosed | | XX |

Notes:
(1) A detailed spreadsheet will be attached to reconcile the amounts summarized above, listing license fees by state and date collected and refunds by customer and date paid.
(2) Each line of this summary spreadsheet will be supported by a Detail Report of Electronic SBS Transactions Per State as illustrated below.

NAIC/AITHENT Licensing Agreement
Detail Report of Electronic SBS Transactions Per State
For the Period Ended:

Transaction Type: BB
Implementation Date of Transaction:
Note: Royalties on this transaction are payable to NAIC/Aithent through _____

| Invoice # | State | Transaction Date | Payment Type | Transaction Fee Collected | Date Collected | Customer ID# |
|---|---|---|---|---|---|---|
| {E} | {A} | XX/XX/XX | Credit Card | {C} | XX/XX/XX | {F} |

HARTFORD 66506v16

Page 36 of 36

CONFIDENTIAL　　　　　　　　　Attorney's Eyes Only　　　　　　　　　AIT_E00327459