UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

AITHENT, INC.,

          Plaintiff,

-against-

THE NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS,

          Defendant.

Case No. 4:11-CV-00173-GAF

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE #1**

NAIC acknowledges that the essence of Aithent's Count II claim is NAIC's failure to pay royalties, and it acknowledges that Aithent can introduce evidence of acts connected with that failure provided that such acts occurred during the statutory period. Def. MIL, p. 3.[1] NAIC argues, however, that acts occurring before 2005 are irrelevant because they took place outside the statutory period. *Id.* at 2-3. That is an incorrect position.[2] The law recognizes that while the statute of limitations precludes a plaintiff from pursuing *damages* incurred before the statutory period, it does not prevent a litigant from introducing relevant evidence of conduct simply because that conduct occurred outside the statutory period. *See, e.g., U.S. v. Chung*, 659 F.3d

---

[1] "Defendant's Motion in Limine #1: NAIC's Alleged Failure to Reasonably Market SBS Prior to February 2005" (Doc. 128) is cited herein as "**Def. MIL.**"

[2] It is worth noting that if Missouri law applies (*i.e.*, if the breaches under Count II consisted of acts other than a failure to pay money, as NAIC argues in the alternative), then *none* of Aithent's claims under Count II accrued (even ones whose damages were felt before 2005) until the end of the contract term in 2012. This is because under Missouri law, a "cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment, *and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.*" V. A. M. S. 516.100, MO ST 516.100 (emphasis added).

815, 828 (9th Cir. 2011) (relying in part on evidence of defendant's conduct prior to limitations period to show defendant's motives during limitations period). The question is just whether the pre-statutory evidence is at all relevant—under the forgiving standard set forth in the Federal Rules of Evidence (FED. R. EVID. 401)[3]—to the claims or defenses at issue in the case. That test is easily met here.

The evidence that NAIC would exclude here—showing that NAIC spent a total of $8,800 to market SBS during the first three years of the contract, when it had $171 million in revenues—bears on Aithent's Count II claims in several ways. For example, one aspect of Count II raises the issue of whether NAIC's efforts to market SBS were reasonable. *See* Ait. Mot., pp. 38-46.[4] NAIC's pre-2005 efforts to market SBS provide indispensible context for assessing the reasonableness of its later marketing efforts during the limitations period. One can imagine, for example, how a trier of fact might view a given effort to be reasonable if it were viewed in isolation, but unreasonable if, just before making that effort, NAIC had taken several steps to affirmatively damage SBS's commercial potential. A juror might consider it necessary for NAIC to make a more vigorous marketing effort in the latter case than in the former case—in order to meet the "reasonable effort to market" standard set forth in the parties' contract—because in the latter case, NAIC would need to counteract the harm it had caused to SBS's commercial prospects just prior to the statutory period.

For this reason, it would be unfair to permit a jury to evaluate NAIC's marketing efforts during the limitations period without proof of the steps NAIC took in the preceding years to

---

[3] *United States v. Mora*, 81 F.3d 781, 783 (8th Cir. 1996) ("Relevance of evidence is established by any showing, however slight, that the evidence makes [a fact of consequence] more or less likely ..." (internal citation and quotation omitted)).

[4] "Aithent's Suggestions in Support of its Motion for Summary Judgment on Counts I-IV" (Doc. 93) is cited herein as "**Ait. Mot.**"

{K0390831.DOCX; 1}  2

damage SBS's potential for commercial success. As set forth in Aithent's summary judgment papers, NAIC in fact took a host of steps which, taken together, show that NAIC severely damaged SBS's chances of succeeding commercially throughout the contract term, including removing the web-based SBS front end from the market during a time when several states were interested in obtaining a web-based front end (Ait. Mot. ¶¶ 30-31, 79-80, 90-91), contributing at the same time to the development of the NIPR front end rather than the SBS one (Ait. Mot. ¶¶ 76-78, 87-88, 104), devoting a tiny fraction of its available resources to marketing SBS during the same early time period while NIPR's product was still in development (Ait. Mot. ¶¶ 98-100), refusing to pay for new development work for SBS under the parties' Master Services Agreement until additional states licensed SBS (Ait. Mot. ¶¶ 100-103), and acknowledging in internal memoranda that SBS had never received "the same kind of financial support" as Gateway (Ait. Mot. ¶ 100). In this context, it would be unfair to limit Aithent to presenting only evidence of the efforts NAIC made to market SBS during the years after 2005 because it is much clearer that that effort was unreasonable when it is seen not in isolation, but in light of the harm NAIC had caused to SBS's commercial potential during the early years of the contract.

Second, evidence of NAIC's failure to adequately market SBS during the years prior to 2005 is relevant to show NAIC's motive in commercializing Gateway, which likewise bears on Aithent's Count II. Specifically, Aithent alleges on Count II that NAIC helped commercialize Gateway for a purpose that is impermissible under the applicable law, *i.e.*, to avoid paying royalties on covered transactions while still benefitting (as a result of the exclusive LEO license) from having Aithent off the market as a competitor. Ait. Mot., pp. 38-44. Aithent's legal theory is that because of this conduct, NAIC was required, as an exclusive licensee, to share the revenue

it earned through Gateway as if such revenue had been earned through SBS.[5] Evidence of NAIC's failure to reasonably promote SBS in the early years of the contract (while simultaneously helping Gateway to obtain the vast majority of the front end market share that NAIC was supposed to pursue for SBS),[6] combined with evidence that NAIC systematically eliminated SBS's front end from the market as Gateway's corresponding functionality became available, makes it more likely that NAIC used the exclusive license not to generate revenues to share with Aithent, but for the improper purpose of keeping Aithent from competing with its own product. *Bloor v. Falstaff Brewing Corp.*, 601 F. 2d 609, 614-15 (2d Cir. 1979) (exclusive licensee breached duty to market when it reduced efforts to market the licensed product in order to emphasize its own brands). If Aithent is only permitted to show what NAIC did or did not do during the limitations period, and not to provide the circumstantial evidence which suggests a bad faith scheme to sidestep SBS throughout the contract term, the jury will not understand a key aspect of Aithent's claim.

NAIC's failure to make reasonable efforts to market SBS prior to the limitations period is also relevant to show that NAIC did not act with good faith to promote SBS *during the limitations period*. *See U.S. v. Chung*, 659 F.3d 815, 828 (9th Cir. 2011) (evidence of intent prior to limitations period was relevant to show that such intent continued into the limitations period). Indeed, many courts have recognized that evidence of a party's conduct prior to the limitations period can be relevant to the party's intent or reasonableness during the limitations period. *See, e.g., Jackson v. Quanex Corp.*, 191 F.3d 647, 668 (6th Cir. 1999) (conduct that occurred before limitations period was relevant, *inter alia*, to show management's attitude toward pattern of misconduct that continued into the limitations period); *Chin v. Port Authority*

---

[5] *See, e.g., Guardino Tank Processing Corp. v. Olsson*, 89 N.Y.S.2d 691 (Sup. Ct. N.Y. County 1949).
[6] *See* Ait. Mot. ¶ 89.

*of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012) (as long as some illegal conduct took place within the limitations period, similar conduct from before it "may be considered to assess liability on the timely alleged act") (internal citation and quotation omitted); *U.S. v. Chung*, 659 F.3d 815, 828 (9th Cir. 2011) (in light of clear evidence of defendant's bad faith intent prior to limitations period, "a rational trier of fact reasonably could infer from Defendant's more recent possession of similar documents that his intent . . . persisted well into the limitations period").

For all of the foregoing reasons, NAIC's motion *in limine* should be denied.

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P.A.
10 E. Cambridge Circle Drive, Suite 300
Post Office Box 171300
Kansas City, Kansas 66117-1300
Telephone: (913) 371-3838
Facsimile: (913) 371-4722
E-mail:ggoheen@mvplaw.com

By: /s/ Gregory P. Goheen
    GREGORY P. GOHEEN   #58119

and

Peter J. Gallagher
Steven D. Johnson
Shannon J. Fields
JOHNSON GALLAGHER MAGLIERY, LLC
99 Wall Street, 15th Floor
New York, New York 10005
Telephone: (212) 248-2220
Facsimile: (212) 248-0170
E-mail: pgallagher@kjglaw.com
    sjohnson@kjglaw.com
    sfields@kjglaw.com

Attorneys for Plaintiff Aithent, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served through the Court's ECF system and/or mailed, postage pre-paid, on this 10th day of May, 2013 to:

Jeffrey J. Simon
Michael S. Hargens
Husch Blackwell, LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112

Attorneys for Defendant

/s/ Gregory P. Goheen