UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

AITHENT, INC.,

    Plaintiff,

-against-

THE NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS,

    Defendant.

Case No. 4:11-CV-00173-GAF

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE #6, #10 AND #14

Plaintiff Aithent, Inc. ("**Aithent**") respectfully submits this brief in opposition to defendant National Association of Insurance Commissioners' ("**NAIC**") Motions In Limine #6 (Doc. 133), #10 (Doc. 137), and #14 (Doc. 141), all of which seek to bar Aithent from introducing evidence or argument establishing that NAIC breached the License Agreement by dropping prices by more than 15%, without Aithent's consent, as alleged in Aithent's Count III. For the reasons set forth below, NAIC's Motions In Limine #6, #10, and #14 should be denied.

NAIC argues in its Motion in Limine #6 that Aithent should be precluded from introducing testimony or evidence establishing that Aithent was underpaid royalties in states which had licensed the SBS back office. If granted, this request would bar Aithent from proving, as it otherwise could, that, even in the states for which NAIC did pay royalties to Aithent (*i.e.*, the states which licensed the SBS back office), NAIC underpaid the royalties owed to Aithent because it paid royalties based on discounts that NIPR gave in excess of 15%, without Aithent's consent, in breach of the License Agreement.

NAIC seeks to prevent Aithent from introducing the testimony and documents that would prove Aithent's Count III based solely on the assertion that Mr. Gopal disavowed this claim at deposition. The deposition testimony that NAIC relies on, however, had nothing to do with Count III. Rather, the testimony that NAIC cites came during a series of questions that related to an entirely different claim, *i.e.*, the claim, asserted in Count I and alternatively in Count II, that NAIC wrongly failed to pay royalties for transactions with states that did not license the SBS back office. (Exhibit A, relevant excerpts of the deposition transcript of Narayanaswamy Venu Gopal taken on September 13, 2012, at 276:20-280:14.) After asking Mr. Gopal questions about Aithent's claim that it is entitled to share Gateway revenue in the states which did not license SBS, and immediately after establishing that Aithent was paid royalties for states which had licensed the SBS back office, NAIC's counsel asked Mr. Gopal to confirm that Aithent's claim is "not that you have been underpaid on royalties" in states which had licensed the SBS back office. Mr. Gopal responded equivocally – "I believe so." (Ex. A at 280:4-8.)

In context, Mr. Gopal's testimony can only be fairly interpreted to represent his confirmation that Aithent is not claiming that NAIC failed to pay royalties for transactions in states which had licensed the SBS back office. In context, it is clear that Mr. Gopal is not repudiating Aithent's pricing claim—in fact, he likely believed he was being questioned about an altogether different claim. Clearly, this testimony does not come close to the sort of unequivocal expression of an intent to abandon a claim that is necessary for waiver. *Silverman v. Silverman*, 304 A.D.2d 41, 46, 756 N.Y.S.2d 14, 19 (2003) ("A waiver, by definition, is the intentional relinquishment of a known right—it must be clear, unequivocal and deliberate." (internal citation omitted)).

Nor can NAIC plausibly contend that it would be prejudiced if Aithent were permitted to introduce documents from NAIC's own files – *i.e.*, the royalty reports NAIC produced to Aithent during discovery – which prove that NAIC improperly dropped prices by more than 15% and paid Aithent royalties in an amount that was based on the greater than 15% discount. If NAIC believes that Mr. Gopal's testimony contradicts the validity of the claim, NAIC is free to cross examine Mr. Gopal at trial. It is Aithent which would be unfairly prejudiced if the equivocal, out-of-context testimony that NAIC relies upon were to prevent Aithent from introducing crucial evidence from NAIC's files proving Aithent's Count III.

In its Motion In Limine #10, NAIC asks the Court to bar Aithent from introducing NAIC's royalty reports for 2011 and 2012. NAIC claims that its royalty reports are irrelevant, but, in fact, they are highly probative of Aithent's Count III because we expect them to show both that prices were dropped by more than 15% and that NAIC paid royalties to Aithent based on the greater than 15% discount. NAIC claims the royalty reports are irrelevant because, according to NAIC, it paid royalties as if the discount were only 15% and that Aithent therefore was not injured by the price reductions. That assertion is false and Aithent did not, as NAIC states, agree to it during the summary judgment phase.

In fact, Aithent's position during summary judgment was that the royalty reports proved both that discounts in excess of 15% were given and that royalties were paid based on the greater than 15% discounts, thus causing injury to Aithent.[1] NAIC did not refute these assertions in its reply papers, thereby conceding them.[2] Local Rule 56.1(a); *see also Tri-States Util., Inc. v. Infinity Metering Co., Inc.*, 6:09-CV-03388-DGK, 2011 WL 2634291, at n.2 (W.D. Mo. July 5,

---

[1] *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment on Count III (Doc. 111), Plaintiff's Statement of Additional Material Facts, ¶¶ 10-17.

[2] *See* Defendant's Reply Suggestions in Support of its Motion for Summary Judgment on Count III (Doc. 121), Response to Aithent's Statement of Additional Facts, ¶¶ 10-17.

{K0390846.DOCX; 1}  3

2011) (when party does not specifically controvert the facts alleged in statement of facts, the uncontroverted facts are deemed admitted.).

In sum, the 2011/2012 royalty reports should not be precluded because they are highly relevant and there is no unfair prejudice to NAIC by their use at trial – much less any unfair prejudice that would substantially outweigh the evidence's probative value. *United States v. Christians*, 105 F. App'x 748, 751 (6th Cir. 2004) ("But all of the evidence [to which the defendants object] was obviously known to the defendants and was not disputed by them. In short, this is not a case in which a defendant could legitimately claim surprise when confronted with evidence of which the defendant had no prior knowledge or could reasonably dispute with regard to its accuracy. The admission of the evidence in question did not prejudice the Christians' ability to defend themselves and did not affect the overall fairness of the trial.").

Nor should Aithent be precluded from introducing evidence showing that Julienne Fritz, the NAIC employee in charge of its relationship with Aithent, who is also NAIC's corporate representative, instructed her staff to prepare royalty reports to send to Aithent that would conceal the price discounts by providing false pricing information. This evidence is important not only to Ms. Fritz's credibility, her motivations and her attitude toward Aithent, but also to show that NAIC did in fact breach the contract and actually did so deliberately. *See* FED. R. EVID. 403. *Berry v. Deloney*, 28 F.3d 604, 607 (7th Cir. 1994) ("Evidence is relevant simply if it tends to make a witness' testimony more or less credible."). In a case that revolves around whether NAIC honored its contractual commitments to Aithent, it is fair for Aithent to try to prove that NAIC deliberately breached the contract clause at issue and then took steps to deceive Aithent so it would not discover the breach.

Lastly, in its Motion in Limine #14, NAIC seeks to bar all evidence regarding what it claims to be a new theory from Aithent concerning the measure of its damages. The first part of NAIC's 14th Motion in Limine focuses on the false assertion that, when it illegally provided greater than 15% discounts without Aithent's consent, it paid Aithent as if the discount were only 15%. Based on the false assertion that it paid NAIC as if the discount were only 15%, NAIC contends that Aithent was not damaged by its breach. This argument fails because its premise is faulty and it is tantamount to a concession that the proper measure of Aithent's damages is, at the very least, the difference between the amounts that Aithent did receive, which were based on greater than 15% discounts, and what Aithent would have been entitled to had the discount been only 15%.

The rest of the 14th Motion in Limine focuses on what Aithent believes the proper measure of damages should be for this claim, which NAIC incorrectly characterizes as a "new theory." Namely, it is Aithent's position that its Count III damages are the difference between the amounts that Aithent received (all based on the greater than 15% discount) and what Aithent would have received if the illegal discount had not been given -- in other words, the undiscounted transaction price. Aithent's theory synchs with the principle that a defendant should not be allowed to take advantage of the very act that was illegal -- here, the giving of the illegal discount. *See, e.g., Villacorta v. Saks Inc.*, 932 N.Y.S.2d 764, 2011 WL 2535058, at *10 (Sup. Ct., N.Y. County, May 6, 2011) (noting general principle that a party may not "profit by her own fraud, or…take advantage of her own wrong") (internal quotation marks omitted); *Barker v. Kallash*, 479 N.Y.S.2d 201, 206 (1984) (no one "shall be permitted to take advantage of his own wrongdoing by predicating a legal or equitable claim upon his fraudulent, immoral or illegal conduct.").

NAIC claims that evidence of this measure of damages should be excluded because Aithent supposedly stated its theory of damages differently in its Second Supplemental Disclosures, in which Aithent described its Count III damages as "the difference between" what Aithent "would have earned" had the illegal discount not been given and the amount that it actually received. Given that Aithent would have earned royalties based on the undiscounted price if the illegal discount had not been granted, this description of Aithent's proposed measure of damages actually describes what NAIC incorrectly portrays as a "new theory." Accordingly, NAIC's Motion In Limine #14 should be denied.

**Conclusion**

For all of the foregoing reasons, NAIC's Motions In Limine #6, #10, and #14 should be denied.

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P.A.
10 E. Cambridge Circle Drive, Suite 300
Post Office Box 171300
Kansas City, Kansas 66117-1300
Telephone: (913) 371-3838
Facsimile: (913) 371-4722
E-mail:ggoheen@mvplaw.com

By: /s/ Gregory P. Goheen
    GREGORY P. GOHEEN    #58119
and

Peter J. Gallagher  
Steven D. Johnson  
Shannon J. Fields  
JOHNSON GALLAGHER MAGLIERY, LLC  
99 Wall Street, 15th Floor  
New York, New York 10005  
Telephone: (212) 248-2220  
Facsimile: (212) 248-0170  
E-mail: pgallagher@kjglaw.com  
       sjohnson@kjglaw.com  
       sfields@kjglaw.com  

Attorneys for Plaintiff Aithent, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served through the Court's ECF system and/or mailed, postage pre-paid, on this 10th day of May, 2013 to:

Jeffrey J. Simon  
Michael S. Hargens  
Husch Blackwell, LLP  
4801 Main Street, Suite 1000  
Kansas City, Missouri 64112  

Attorneys for Defendant

                              /s/ Gregory P. Goheen