# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION
-----------------------------------x

AITHENT, INC.,

                         Plaintiff,

    -against-

                         Case No. 4:11-CV-00173
                               (GAF)

THE NATIONAL ASSOCIATION
OF INSURANCE COMMISSIONERS,

                         Defendant.

-----------------------------------x


CONTINUED

VIDEOTAPED DEPOSITION OF NARAYANASWAMY VENU GOPAL

Thursday, September 13, 2012

New York, New York



REPORTED BY:
Holly Hough

One Penn Plaza, NYC    Toby Feldman, Inc.    (212) 244.3990
email@tobyfeldman.com  NATIONWIDE SERVICES FOR LEGAL PROFESSIONALS  (800) 246.4950

Case 4:11-cv-00173-GAF   Document 172-1   Filed 05/10/13   Page 2 of 5

## Page 273

September 13, 2012
9:26 a.m.

Continued Videotaped Deposition of NARAYANASWAMY VENU GOPAL, taken by Defendant, pursuant to Adjournment, at the offices of Johnson Gallagher Magliery LLC, 99 Wall Street, 15th Floor, New York, New York 10004, before Holly Hough, a Shorthand Reporter and Notary Public within and for the State of New York.

## Page 274

APPEARANCES

JOHNSON GALLAGHER MAGLIERY LLC
Attorneys for Plaintiff
    99 Wall Street, 15th Floor
    New York, New York 10005

BY:  STEVEN JOHNSON, ESQ.

PHONE: 212.248.2820

FAX:   212.248.0170

EMAIL: sjohnson@jgmlaw.com


HUSCH BLACKWELL, LLP
Attorneys for Defendant
    4801 Main Street, Suite 1000
    Kansas City, Missouri 64112

BY:  JEFFREY J. SIMON, ESQ.

PHONE: 816.329.4711

FAX:   816.983.8080

EMAIL: jeff.simon@huschblackwell.com

    -and-

MICHAEL HARGENS, ESQ.

## Page 275

APPEARANCES (continued)

NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS
    1100 Walnut Street, Suite 1500
    Kansas City, Missouri 64106-2197

BY:  BETH HARGARTEN, ESQ., Managing Counsel

PHONE: 816.783.8029

FAX:   816.460.7459

EMAIL: bhargarten@naic.org


NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS
    2301 McGee Street, Suite 800
    Kansas City, Missouri 64108-2662

BY:  JULIENNE L. FRITZ,

    Chief Business Strategy

    and Development Officer

PHONE: 816.783.8709

FAX:   816.460.7495

EMAIL: jfritz@naic.org

ALSO PRESENT:
    ALEXIS REBOLLEDO, Legal Video Specialist

## Page 276 — Gopal

THE VIDEOGRAPHER: Good morning. This is volume two of the continued examination of Mr. Venu Gopal, as a 30(b)(6) witness on behalf of Aithent, Inc., on September 13, 2012. The time is 9:26 a.m. My name is Alexis Rebolledo and I will be the legal video specialist. All parties will be noted record, and the witness is still under oath.

NARAYANASWAMY VENU GOPAL, having been duly sworn previously by a notary public, was examined further and testified as follows:

FURTHER EXAMINATION BY MR. SIMON:

Q. Good morning, Mr. Gopal.

A. Good morning.

Q. We're resuming your 30(b)(6) deposition and I'll remind you, you're still under oath.

A. Yes.

Q. Mr. Gopal, under your Aithent License Agreement with NAIC, was it your understanding that the SBS system would have two different front ends or one front end?

A. I didn't have any understanding of how many front ends would be there for SBS. I don't

One Penn Plaza, NYC    Toby Feldman, Inc.    (212) 244.3990
email@tobyfeldman.com  NATIONWIDE SERVICES FOR LEGAL PROFESSIONALS    (800) 246.4950

Case 4:11-cv-00173-GAF   Document 172-1   Filed 05/10/13   Page 3 of 5

**Gopal 277**

quite understand that.
  Q. Do you understand what a front end is?
  A. A front end is our interface to the system.
  Q. A front end facing toward the producers is what I'm talking about, not a front end for the user, but the front end for the producers and brokers and other industry users who might be wanting to enter transactions and information into SBS; do you understand that to be a front end?
  A. I mean, I can certainly take that definition.
  Q. Here's my question: What was your understanding as to what would be the front end of the SBS system?
      MR. JOHNSON: Is this at the time he entered into the contract?
      MR. SIMON: Yes.
  A. Let me try and see if I can answer the question by explaining what I understood at the time.
  Q. Okay.
  A. Aithent had developed LEO. And the LEO system had the capability to both support the

**Gopal 278**

regulators and their use of the system, as well as it was designed to support the fact that producers who were not part of the Insurance Regulatory Department or individuals who were outside of the Regulatory Department would be able to fill out forms and submit applications for whatever it is that they were seeking to apply for, and would be able to submit that seamlessly to state regulators. So that was LEO.
      I think that in our discussions that we had with Mr. Gummig, right from the outset, it was made clear to me that there was an interest on the part of the NAIC to be able to look at LEO as the basis to build the system.
      And at the same time, they did communicate the fact that the NAIC, through its affiliate, NIPR, already had certain functions that we already had within the LEO but that NIPR was already marketing at the time, for example, appointments and terminations. And so there was discussion around the fact that even though LEO had some functionality that the NAIC may choose to use the NIPR functionality.
      So in that context, if I were to look at

**Gopal 279**

your question, would there be multiple interfaces, I think the answer is there could have been multiple interfaces.
  Q. Did you have an expectation though as to whether there would be a separate SBS front end different from an NIPR Gateway front end?
  A. I think there was certainly an expectation that SBS would have the ability to service nonresident licenses, their renewals, resident licenses, their renewals. Whether or not those interfaces were directly built into SBS or whether these interfaces were coming in through a third-party system like, for example, something that NIPR had, I think was not really something that we spent much time on.
      The reason for that is, it was my understanding, and I'm pretty sure it was Mr. Gummig's understanding as well, that there would be a sharing of those revenue streams, regardless of how it came in.
  Q. And you understand, sir, or do you understand, whether NAIC has paid a royalty to Aithent on Exhibit A transactions, which we discussed yesterday, on transactions which are

**Gopal 280**

processed in states which have licensed SBS?
  A. Yes, we have, in states.
  Q. As I understand it, your claim in this lawsuit is not that you have been underpaid on royalties for transactions which were processed in a state which licensed SBS; is that correct?
  A. I believe so, yes.
  Q. Your claim rather is that you want to be paid for transactions processed through the NIPR Gateway that did not get processed in a state which has licensed SBS?
      MR. JOHNSON: Objection to form.
  A. That is certainly one part of it, yes.
  Q. What are the other parts of it?
  A. I believe, again, that with regard to these royalties, that royalties for those transactions listed in Exhibit A, including appointments and terminations, would be shared with us regardless of whether or not SBS is implemented in the state.
  Q. And that was your understanding from the date the agreement was signed?
  A. That's certainly one part of the royalties, yes.

One Penn Plaza, NYC        Toby Feldman, Inc.                  (212) 244.3990
email@tobyfeldman.com   NATIONWIDE SERVICES FOR LEGAL PROFESSIONALS  (800) 246.4950

Case 4:11-cv-00173-GAF   Document 172-1   Filed 05/10/13   Page 4 of 5

```
                    Gopal                    473
    A. Again, I believe that that was indicated,
yes. However, I think that, again, when we were
negotiating the contract, NAIC and NIPR appeared to
be one.
    MR. SIMON: Let's take a brief break.
    THE VIDEOGRAPHER: This completes tape
number three. The time is 4:45 p.m. and we are
now going off the record.
    (Defendant's Exhibits 74 through 102,
marked for identification, as of this date.)
    THE VIDEOGRAPHER: This begins tape
number four. The time is 5:07 p.m. and we are
now back on the record.
    MR. SIMON: We've concluded Mr. Gopal's
deposition, and Mr. Johnson is with me. We
have a stack of documents we have marked as
Defendant's Exhibit 74 through Defendant's
Exhibit 102, inclusive.
    And Mr. Johnson, can we reach a
stipulation that these documents are genuine
and authentic as produced to us?
    MR. JOHNSON: We will stipulate to the
authenticity of each of these documents, as
they came out of Aithent's files. We did
```

```
                    Gopal                    474
notice a couple issues with regard to dates and
perhaps confidentiality designations, but we
will work with you to clear those up
subsequently.
    MR. SIMON: And those date issues are the
Microsoft function of sometimes updating
documents when they're printed, and therefore
the date doesn't reflect --
    MR. JOHNSON: That appears to be the
issue. I think that's it.
    MR. SIMON: And we'll work with you on
this.
    MR. JOHNSON: Yes.
    THE VIDEOGRAPHER: The time is 5:08 p.m.
on September 13, 2012, and this completes
today's deposition of Venu Gopal.
    (Time noted: 5:10 p.m.)
    (Total time on the record: Five hours and
three minutes.)
```

                                           475

ACKNOWLEDGEMENT

STATE OF NEW YORK)
                 ss
COUNTY OF NEW YORK)

I, NARAYANASWAMY VENU GOPAL, hereby certify, I have read the transcript of my testimony taken under oath in my deposition of September 13, 2012; that the transcript is a true, complete and correct record of what was asked, answered and said during this deposition, and that the answers on the record as given by me are true and correct.

_____
NARAYANASWAMY VENU GOPAL

Sworn and subscribed to before me
this_____day of_____2012.

_____
Notary Public

                                           476

CERTIFICATE
-----------------------

STATE OF NEW YORK)
                 ss
COUNTY OF NEW YORK)

I, HOLLY L. HOUGH, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That NARAYANASWAMY VENU GOPAL, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given in such proceeding.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

In witness, whereof, I have hereunto set my hand this_____day of_____, 2012.

_____
HOLLY L. HOUGH

One Penn Plaza, NYC    Toby Feldman, Inc.                (212) 244.3990
email@tobyfeldman.com   NATIONWIDE SERVICES FOR LEGAL PROFESSIONALS    (800) 246.4950

Case 4:11-cv-00173-GAF   Document 172-1   Filed 05/10/13   Page 5 of 5