# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| AITHENT, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 4:11-CV-00173-GAF ) ) |
| NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS, | ) ) ) |
| Defendant. | ) ) |

## DEFENDANT'S OPPOSITION TO AITHENT'S MOTION TO ADD EXHIBITS

In an amazing display of hubris, Aithent is now seeking—26 days before trial—to present an "alternative estimation of its damages." Doc. 185 at 1. Better stated, this is an entirely new theory of damages that:

- Was presumably created by Aithent's counsel;

- Was created at the eleventh hour;

- Was never disclosed by Aithent until this very motion;

- Is equally-unreliable; and

- Is a last-ditch effort to avoid the impending-implosion of Aithent's damages theory based on the Court's comments at the pretrial conference.

Stated yet another way, **Aithent is asking this Court to sanction a $15.4 million trial by ambush**. In so doing, Aithent has attempted to hang this entire motion—and this entire change of its damage theory—on a single document. Not surprisingly, Aithent also seeks to blame NAIC for not providing Aithent with that document, a document that: (1) NAIC did not create; (2) was released last month; and (3) was publicly-available to anyone in the world,

including Aithent, who printed it off the NIPR website. Needless to say, this is an insufficient basis to suddenly throw NAIC into a situation where it must defend itself against a new $15,400,000 damage theory that Aithent *never disclosed and was never subject to discovery.*

Nevertheless, Aithent thinks it should have a *third* chance because its *first two* damage theories did not work. Doc. 185 (basing this motion on "the Court's indication, during the pretrial conference on May 14, that it may not permit Aithent to estimate its lost royalties . . . using the revenue figure . . . that NAIC represented in its interrogatory responses."). NAIC could not disagree more.

## I. Aithent Ignores this Court's Standard for Amendments

As this Court makes very clear in its scheduling order, "no supplemental or amended list of exhibits will be filed without leave of Court *for good cause*." Doc. 24 at 5 (emphasis added). Aithent does not even pay lip service to the Court's standard, but instead, ignores it entirely. See generally Doc. 185 (failing to address the Court's standard or even use the words "good cause"). Rather than applying the Court's standard, Aithent has simply asked for a second chance to prove its damages because the first attempt has been, thus far, unsuccessful.

Aithent has premised its motion on the fact that this Court has already indicated that it was inclined to sustain an objection to Aithent's gross revenue damage theory. Doc. 185 at 1. Consequently, Aithent is seeking—through a motion to amend—to formulate and present a brand new damages theory because its first one is in peril. This is not good cause, nor is this the proper procedural vehicle to fundamentally change Aithent's claims.[1]

---

[1] Aithent's citation to New York law regarding amendments to exhibit lists is not only factually distinguishable but it is entirely misplaced. New York precedent does not apply to the procedural aspects of this case. This Court's scheduling order is the direct authority on this point and Aithent has ignored it.

2

## II. Aithent Has Now Created A *Third* Damages Theory—In the Final Days Before Trial

Aithent ostensibly seeks only to "add certain documents to the exhibit list." All of the subject documents were either 1) in Aithent's possession (or freely available to it) prior to the Court's deadline or 2) created after the Court's deadline. The true intent of this motion, however, is much further-reaching in its intent and in Aithent's underlying audacity. Doc. 185 at 1. The implications of Aithent's motion would change the entire complexion of this case in the final four weeks before trial. Aithent is not seeking to simply add a new NIPR annual report or other documents that it had access to prior to the Court's deadline. Aithent is seeking to scrap its old damage theory and present a new damage theory which was created after the exhibit lists were filed and after the Court's indication of its rulings *in limine*. Doc. 185 at 1.

Aithent admits this. Aithent states in its motion that this request is based on "the Court's indication, during the pre-trial conference on May 14, that it may not permit Aithent to estimate its lost royalties . . . using the [gross] revenue figure." Doc. 185 at 1. The timeline here is not difficult—and Aithent's motivation is transparent. Aithent has spent the past two years developing its gross revenue theory of damages. While NAIC has consistently argued that this was an insufficient and unreliable estimation, Aithent continued to argue otherwise. Bowing to the pressure exerted through NAIC's arguments put forward at summary judgment, Aithent recently changed its "one-half of everything" approach to "five-sixths of one-half of everything." Compare Doc. 113 at 48-52 (claiming damages of one-half of NIPR's gross revenue) with Doc. 166 at 4 (claiming damages of "five-sixths of the total gross revenue figure that NAIC provided during discovery.")[2] And now Aithent wants to change its damages theory *yet again* and put forward a third "alternative estimate." Doc. 185 at 1; Doc. 185 Ex. L (purporting to provide a new calculation of damages).

---

[2] This undisclosed switch from Aithent's first theory to Aithent's second theory was no less improper.

3

This latest estimate relies on a spreadsheet—**author unknown**—that was created for purposes of this litigation.[3] That newly-created spreadsheet appears to rely on *someone's* interpretation of a basic line graph included in NIPR's annual report. That interpretation—wherein someone has interpreted dots on a line and presumably rounded those perceived amounts to the nearest hundred thousand dollars—is then subjected to a series of further calculations (again by persons unknown) based on assumptions the unknown author has made about certain transactions and states.[4] And at the end of the day (and perhaps not surprisingly), Aithent's unknown author presents a *higher* multi-million dollar figure of its supposed damages. Needless to say, this information is no more reliable than Aithent's "one-half of everything" approach or its "five-sixths of one-half of everything" approach. Perhaps more importantly, all of this information would have been useful to know when the parties were required to disclose their experts—**fourteen months ago**. See Doc. 38 (setting expert disclosure deadline for March 15, 2012).[5]

Aithent's latest damages theory would have been of interest to NAIC when Aithent made its initial Rule 26 disclosures in April 2011, or when it supplemented its Rule 26 disclosures in

---

[3] Aithent spends six pages explaining this new calculation but never once says *who* specifically created it. Needless to say, had this theory ever been disclosed in a timely manner, that would likely have been the first question NAIC would have asked.

[4] Viewing this at the most superficial level—which is all NAIC can do—the flaws in Aithent's latest approach are many and they are severe. The basic issues with Aithent's approach are that: (1) it does not rely on precise amounts of revenue from NIPR; (2) the revenue in some of the years of NIPR's graph includes credit card fees which were not subject to the Agreement; (3) Aithent treats all states as equal when it tries to roll them off after 5 years (i.e., the revenue from any high-population state, say California, is deemed to be the same as that of a low-population state, such as Idaho); and (4) Aithent is still halving NIPR's gross revenue for 2012 because the annual report does not provide monthly revenue through July 2012, when Aithent's royalty rights expired completely. This information should have been contained within the opinion of an expert—assuming an expert would attach his or her name to this latest calculation.

[5] Whether or not this latest calculation is in any way reasonable or accurate is squarely within the scope of an expert witness. Aithent has not disclosed an expert in this case. As such, NAIC has not had the opportunity to depose anyone about this theory or subject it to the strict criteria of Daubert. Additionally, it would be interesting to know who exactly at Aithent can testify at trial about creating this calculation.

October 2012.  It would have been of interest to NAIC when Aithent responded to NAIC's Interrogatory Number 10 (asking for Aithent's damages) in July 2011.

As is likely clear by now, Aithent has never disclosed this new theory—**ever**.  The final weeks before trial—long after summary judgment motions were filed and final pretrial motions were ruled upon—is far too late.  FED.R.CIV.P. 37(c)(1) (forbidding use at trial of undisclosed information required by Rule 26(a));  Arabian Agriculture Servs., Co. v. Chief Indus., Inc., 309 F.3d 479, 482 (8th Cir. 2002) (upholding district court's exclusion of expert's calculations that were not disclosed under Rule 26);  Fu v. Owens, 622 F.3d 880, 883 (8th Cir. 2010) (applying Rule 37(c)(1) in excluding evidence not properly disclosed under Rule 26(a));  Roberts ex rel. Johnson v. Galen of Virginia, Inc., 325 F.3d 776, 782 (6th Cir. 2003) (stating that Rule 37((c)(1) "requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'").

Through this motion, Aithent is asking this Court to completely ignore the Federal Rules of Civil Procedure and its own rules and order.  Aithent is asking this Court to ignore the fundamental principles of fairness and open disclosure embodied in those rules.  Aithent is asking this Court to allow Aithent to sandbag NAIC and subject NAIC to a patently unfair trial by ambush based on Aithent's anonymous back-of-a-napkin calculation that has just now surfaced.  The prejudice to NAIC cannot be overstated.

### III. NIPR's Month-Old Annual Report Changes Nothing

Aithent is seeking to create an entirely new damage theory because NIPR—not NAIC—released an annual report *last month*.  April 7, 2013 Press Release, attached hereto as Exhibit A. While Aithent states that "Aithent's document requests were served before the NIPR 2012

5

Annual Report was released," this is an understatement. Aithent's document requests pre-dated this report by nearly two years. Moreover, this is not an NAIC document; NAIC did not create it. It is an NIPR document that was available on NIPR's website, a website with which Aithent's CEO Venu Gopal testified he was very familiar. Deposition transcript of Venu Gopal at 172:24-175:5, 301:23-302:6, attached hereto as Exhibit B. It is a website that Aithent repeatedly accessed and from which it repeatedly printed documents.[6] The fact that this annual report is a publicly-available document is borne out by the fact that Aithent actually downloaded it.[7] Finally, it was available to Aithent from April 7—more than one month before this Court's deadline for exhibits.

Nevertheless, Aithent is essentially complaining that NAIC did not download the same document from the same non-party website and produce it to Aithent. Because of this, Aithent somehow thinks it is entitled to completely change its damages theory on the eve of trial. Aithent should think again.

This report is a non-issue, but it is the only thing Aithent can point to in an effort to completely change its damage theory on the eve of trial (because of the Court's inclination expressed at the pretrial conference). It is far from enough and falls far short of "good cause" required by this Court. Doc. 24 at 5.

---

[6] Aithent also included, on its exhibit list, numerous other documents Aithent has printed from NIPR's website. Doc. 174 Ex. 239, 241, 256, 257, 258, 259, 260, 261, 262. Many of the exhibits contain the dates they were recently printed. Needless to say, Aithent was very familiar with NIPR's website and used it to its advantage, but Aithent has not explained why it did not print this annual report sooner.

[7] This shows the frivolity of Aithent's assertion that NAIC did not produce this document. Aithent's own Corporate Representative and its witness list show it to be well-versed in obtaining NIPR information from NIPR's website. The Federal Rules do not require a defendant to produce information to a plaintiff who can retrieve the information itself with less burden and expense. FED.R.CIV.P. 26(b)(2)(C)(i)-(ii) ("[T]he court must limit … discovery otherwise allowed by these rules … if it determines that (i) the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.").

## IV. Aithent Seeks to Slip In Other Documents It has Possessed Since Discovery (and Before)

For reasons unknown to NAIC—and certainly unexplained by Aithent—Aithent has attempted to add *52 additional documents* to its exhibit list other than the NIPR annual report. Compare Doc. 174 (containing 262 exhibits) with Doc 185 Ex. N (containing 315 exhibits). These additional documents are primarily SBS royalty reports that Aithent has had certainly since discovery, and more likely, since they were sent to Aithent during the life of the Agreement.

Aithent has provided no justification for these late additions—it certainly has not demonstrated good cause. Doc. 24 at 5 (ordering that "no supplemental or amended list of exhibits will be filed without leave of Court *for good cause*." (emphasis added)).

## V. It is Far Too Late for Aithent to Try to Change this Case

Aithent has tried, both through this motion and Aithent's motion to reopen discovery, to obtain from this Court a "do-over." It is far too late in the day for such antics. This case has been going on for more than two years and NAIC is entitled to a final resolution in the coming month.

During the course of the past two years, Aithent articulated and chose to pursue a gross revenue theory for its alleged damages. Aithent defended this decision throughout discovery, dispositive motions, and motions in limine. Now that Aithent has heard from this Court, it is trying to start the entire process over and it is trying to pursue Plan B and Plan C. That is not how this process works.

Discovery has concluded, summary judgment has been briefed, and the Court has signaled its intentions regarding NAIC's motion in limine. Now that the end is in sight and

7

Aithent does not like the result, Aithent is trying desperately to get out of the box it has put itself in. Rather than admitting its sole culpability for the position it is now in, Aithent has instead taken the shameful approach of blaming NAIC for not producing one document that: (1) NAIC did not create, (2) was released last month, and (3) was publicly-available. Compounding this abhorrent behavior, Aithent has tried through its motion to reopen discovery to blame NAIC for an email Aithent says it "just discovered"—despite the fact that ***NAIC produced the email to Aithent 18 months ago and Aithent used it as a deposition exhibit***. Aithent is trying anything it can to avoid the consequences of its decisions. And in so doing, the depth to which Aithent will sink in that regard apparently has no bounds.

Aithent chose to pursue this damage theory. Aithent chose not to hire a damages expert to put together a reliable figure. Aithent must now live with the consequences of its choices. NAIC cannot be prejudiced by Aithent's inability—or unwillingness—to build a submissible case. Every notion of fairness, which is explicitly embodied in the Federal Rules, cries out to deny Aithent's attempt to ambush NAIC with a brand new $15.4 million damages theory that ***Aithent never disclosed***.

It is for these reasons that NAIC respectfully requests this Court deny Aithent's motion.

Respectfully submitted,

HUSCH BLACKWELL LLP

/s/ Jeffrey J. Simon
Jeffrey J. Simon     MO# 35558
Michael S. Hargens     MO# 51077
Aaron J. Mann     MO# 53220
Judd M. Treeman     MO# 64392
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
jeff.simon@huschblackwell.com

michael.hargens@huschblackwell.com  
aaron.mann@huschblackwell.com  
judd.treeman@huschblackwell.com  

Attorneys for Defendant National Association of Insurance Commissioners

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was forwarded on May 22, 2013, via the Court's CM/ECF system, to:

Gregory P. Goheen  
McAnany VanCleave & Phillips, P.A.  
10 E. Cambridge Circle Drive, Suite 300  
P.O. Box 171300  
Kansas City, KS 66117  

Peter J. Gallagher  
Steven Johnson  
Shannon Fields  
Johnson Gallagher Magliery LLC  
99 Wall Street, 15th Floor  
New York, NY 10005  

/s/ Jeffrey J. Simon