IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AITHENT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. |
| | ) 11-0173-CV-W-GAF |
| THE NATIONAL ASSOCIATION | ) |
| of INSURANCE COMMISSIONERS, | ) |
| | ) |
| Defendant. | ) |


VIDEOTAPED DEPOSITION OF JULIENNE L. FRITZ

VOLUME 2

TAKEN BY MR. PETER GALLAGHER

ON BEHALF OF THE PLAINTIFF

OCTOBER 19, 2012

9:35 a.m.


REPORTED BY NAOLA C. VAUGHN
REGISTERED PROFESSIONAL REPORTER
CERTIFIED COURT REPORTER (MO #1052)
CERTIFIED REALTIME REPORTER
JOB # 377488

Case 4:11-cv-00173-GAF   Document 189-4   Filed 05/22/13   Page 1 of 10   EXHIBIT D

```
 1              IN THE UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF MISSOURI
 2
      AITHENT, INC.,                )
 3                                  )
                     Plaintiff,     )
 4                                  )
      vs.                           ) Case No.
 5                                  ) 11-0173-CV-W-GAF
      THE NATIONAL ASSOCIATION       )
 6    of INSURANCE COMMISSIONERS,   )
                                    )
 7                   Defendant.     )

 8

 9

10

11              VIDEOTAPED DEPOSITION OF JULIENNE L. FRITZ,

12    Volume 2, produced, sworn, and examined on Thursday,

13    the 19th day of October, 2012, at the offices of Husch

14    Blackwell, LLP, 4801 Main Street, Suite 1000, in the

15    City of Kansas City, State of Missouri, before

16    Naola C. Vaughn, Registered Professional Reporter,

17    Certified Realtime Reporter and Certified Court

18    Reporter within and for the State of Missouri.

19

20

21

22

23

24

25
```

```
 1              A P P E A R A N C E S:

 2    On behalf of the Plaintiff:

 3         JOHNSON GALLAGHER MAGLIERY, LLC
           BY:  PETER GALLAGHER
 4              and
           BY:  SHANNON J. FIELDS
 5         99 Wall Street
           15th Floor
 6         New York, New York  10005
           (212)248-2797
 7         pgallagher@jgmlaw.com
           sfields@jgmlaw.com
 8

 9    On behalf of the Defendant:

10         HUSCH BLACKWELL, LLP
           BY:  JEFFREY J. SIMON
11         4801 Main Street
           Suite 1000
12         Kansas City, Missouri  64112
           (816)983-8000
13         jeff.simon@huschblackwell.com

14
      Also Present:  Venu Gopal, Aithent
15                    Beth Hargarten, NAIC
                      Jim Ross, videographer
16

17         COURT REPORTER:

18         Naola C. Vaughn, RPR, CSR, CCR
           ESQUIRE DEPOSITION SOLUTIONS
19         720 Olive Street
           Suite 1610
20         St. Louis, Missouri 63101
           (314)621-6173
21

22

23

24

25
```

1          MR. SIMON:  Objection, mischaracterizes

2     all the prior testimony.

3          A.    That would result in less revenue being

4     generated for the NAIC and reflected in the SBS

5     department.

6          MR. GALLAGHER: Okay.  Thanks.  I think

7     we should take a break.

8          THE VIDEOGRAPHER:  Okay.  This ends tape

9     No. 2.  It is 11:42 a.m.  We're off the record.

10         (A recess was taken.)

11         (Exhibits 121 through 125 marked.)

12         THE VIDEOGRAPHER:  Beginning of tape

13    No. 3.  It is 11:58 a.m.  We're back on the record.

14         Q.    BY MR. GALLAGHER:  Is it true,

15    Ms. Fritz, that NAIC and NIPR each earn twice as

16    much when a transaction does not go through SBS as

17    they do when the transaction does go through SBS?

18         A.    No.

19         Q.    Okay.  Let me show you a document which

20    we've marked as Exhibit 121, please.

21         Can I ask you please to look at the

22    email that starts on page 3 of the document.

23         A.    Okay.

24         Q.    And that is -- this is an email from

25    Brady Kelley to Greta Roberts and Ron Goodwin from

1    July of 2009; is that right?

2        A.    Yes.

3        Q.    And was Mr. Kelley an NAIC employee in

4    2009?

5        A.    Yes.

6        Q.    What was his title?

7        A.    Chief financial officer -- no.  Chief

8    business strategy and chief financial officer, I

9    believe.

10       Q.    Am I correct that the subject line of

11   the email is "SBS Revenue Sharing"?

12       A.    Yes.

13       Q.    And am I correct that on page 4 he

14   writes, "Here's a quick summary of how this should

15   work"?

16       A.    Yes.

17       Q.    He says that "NIPR transaction to

18   non-SBS state"?

19       A.    Yes.

20       Q.    "70 percent of the gross revenue goes to

21   NIPR; 30 percent goes to NAIC"; is that right?

22       A.    Yes.

23       Q.    And then he writes that, "NIPR

24   transaction to an SBS state, 50 percent of gross

25   revenue to Aithent, 35 to NIPR, 15 percent to NAIC,"

1    right?

2          A.    Yes.

3          Q.    Was he wrong about these figures?

4          A.    No.

5          Q.    Don't -- doesn't this show that NAIC and

6    NIPR each earn twice as much when a transaction does

7    not go through SBS?

8          A.    That wasn't your question.

9          Q.    Oh.

10         A.    I don't believe.

11         Q.    Okay.  Well, let me ask it to you now.

12               Isn't it true that NAIC and NIPR each

13   earn twice as much when a transaction does not go

14   through SBS as they do when the transaction does go

15   through SBS?

16         A.    Okay.  That was your question before --

17         Q.    Okay.

18         A.    -- and that's what I answered no to.

19         Q.    Okay.

20         A.    So what this says is, if there's an NIPR

21   transaction that comes through and it's for a

22   non-SBS state, yes, NIPR earns 70 percent.  NAIC

23   earns 30 percent.  If it's an NIPR transaction and

24   there isn't --

25               (Reporter asked for clarification.)

1      A.    If it is an NIPR transaction for a

2  non-SBS state, 70 percent of the gross revenue goes

3  to NIPR and 30 percent goes to the NAIC.

4           If it's an NIPR transaction and there is

5  an SBS -- and it's for an SBS state, then 50 percent

6  of the gross revenue to Aithent -- goes to Aithent

7  and 35 percent goes to NIPR and 15 percent goes to

8  the NAIC.  Okay.

9           So in that scenario, if it's an NIPR

10 transaction and you're comparing a non-SBS state and

11 an SBS state, yes, it is true that the NIPR and NAIC

12 earn twice as much, if it's not an SBS state and a

13 transaction goes through NIPR.

14     Q.    Thank you.

15     A.    That was not your question.

16     Q.    Let me show you a different document

17 which I believe we have also premarked.  This is

18 Exhibit 122.

19           MR. SIMON:  Thank you.

20     Q.    BY MR. GALLAGHER:  Am I correct that

21 these are NAIC's answers to interrogatories that

22 Aithent served on NAIC in the context of this case?

23     A.    First supplemental answers, yes.

24     Q.    And am I correct that you swore under

25 oath that the contents of this document are

1   off after five years -- five years after its

2   implementation.  This would represent transactions

3   for the full-time period here, 2006 to 2011, and not

4   take into consideration that rolloff.

5        Q.    How would the figure change, if you did

6   take that into consideration?

7        A.    It would go down, but I don't know by

8   how much.

9        Q.    Could you figure that out?

10       A.    No.

11       Q.    Why not?

12       A.    We don't have the information to

13  calculate that.

14       Q.    So neither NAIC nor NIPR has that

15  information?

16            MR. SIMON:  Objection, lacks foundation,

17  calls for speculation.

18       A.    I don't know.

19       Q.    BY MR. GALLAGHER:  So is it your

20  testimony that it's impossible for NAIC to determine

21  how the figure would change, taking into account

22  this rollout, I think you referred to it?

23            MR. SIMON:  Objection, mischaracterizes

24  her testimony.  And we'll stipulate that nothing is

25  impossible.

1     A.     The NAIC does not have the information

2  necessary to provide that to you.

3          MR. GALLAGHER:  Okay.  I will ask that

4  you, NAIC, that is, update this figure so that it's

5  inclusive of the life of the contract, which is

6  through July 5th -- excuse me, 15th of 2012.

7          Let's take a quick break.

8          THE VIDEOGRAPHER:  This ends tape No. 5.

9  It is 3:15 p.m., and we're off record.

10          (A recess was taken.)

11          THE VIDEOGRAPHER:  Beginning of tape

12  No. 5, it's 3:27 p.m.  We're back on the record.

13     Q.     BY MR. GALLAGHER:  Okay.  If I could

14  show you, please, Ms. Fritz, a document which we've

15  marked as Plaintiff's Exhibit 133.

16          MR. SIMON:  Thank you.

17     Q.     BY MR. GALLAGHER:  I'm just going to ask

18  you about one page.

19     A.     Okay.

20     Q.     Take as much time as you want, but I

21  just want to establish, this is the -- first of all,

22  this is the NAIC's response to a document request

23  that we served on NAIC, and if I could just ask you

24  to turn to the last page of the document, please.

25          Do you see where the top half of the

1   foundation.

2       A.    I would say that they do not apply and

3   there would not be a way to calculate any potential

4   revenue share based on the terms of the agreement.

5       Q.    BY MR. GALLAGHER:  So I'm really not

6   arguing with you.  I just want to understand.

7             Is it your testimony that it would be

8   impossible for NAIC to determine what would be owed

9   to Aithent for any of these transactions or just for

10  some of them?

11            MR. SIMON:  Objection, lacks foundation,

12  calls for speculation.

13      A.    I don't believe that we could, based on

14  the structure of the agreement and the obligations

15  under the agreement, with the exception of one that

16  is non-resident adjustor licensing, and Aithent was

17  paid for non-resident adjustor licensing.  It was

18  reported under the NRL category.

19      Q.    BY MR. GALLAGHER:  But remember, I'm not

20  getting into whether -- your viewpoint of whether

21  Aithent really is owed for these transactions or

22  not.  That's not where I'm coming from.

23            My question is just based on the

24  information that NAIC has, would it be possible for

25  NAIC to calculate what Aithent would be owed, if