```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF MISSOURI
                        WESTERN DIVISION

AITHENT, INC.,                       )
                                     )
             Plaintiff,              )
                                     )
     vs.                             )  Case No.
                                     )  11-CV-00173-GAF
THE NATIONAL ASSOCIATION OF          )
INSURANCE COMMISSIONERS,             )
                                     )
             Defendant.              )
```

TRANSCRIPT OF PROCEEDINGS

On May 14, 2013, the above-entitled cause came on before the Honorable Gary A. Fenner, United States District Judge, sitting in Kansas City.

APPEARANCES

| | |
|---|---|
| For the Plaintiff: | Mr. Steven Johnson |
| | Mr. Peter Gallagher |
| | Ms. Shannon Fields |
| | Johnson Gallagher Magliery LLC |
| | 99 Wall Street, 15th Floor |
| | New York, New York 10005 |
| | |
| For the Defendant: | Mr. Jeffrey S. Simon |
| | Mr. Aaron J. Mann |
| | Mr. Michael S. Hargens |
| | Mr. Judd M. Treeman |
| | Husch Blackwell LLP |
| | 4801 Main Street, Suite 1000 |
| | Kansas City, Missouri 64112 |

Katherine A. Calvert, RMR
United States District Court Reporter
Charles Evans Whittaker Courthouse
400 East Ninth Street
Kansas City, Missouri 64106
(816) 512-5741

1

```
 1                        MAY 14, 2013
 2            (The following proceedings were had in chambers
 3   pursuant to a telephone conference:)
 4            THE COURT:  Hello.
 5            MR. JOHNSON:  Good afternoon.  This is Steve
 6   Johnson, counsel for Aithent, and we have counsel for NAIC on
 7   as well.  We are calling in for the pretrial conference with
 8   Judge Fenner.
 9            THE COURT:  All right.  Thank you, Mr. Johnson.
10   This is Judge Fenner.  Do you have anyone else with you, Mr.
11   Johnson, on behalf of the plaintiff?
12            MR. JOHNSON:  Yes, I do.  My partner, Peter
13   Gallagher, and colleague, Shannon Fields, are on the line as
14   well.
15            THE COURT:  All right.  Thank you.
16            And who is on the line on behalf of defendant?
17            MR. SIMON:  Good afternoon, Your Honor.  This is
18   Jeff Simon for defendant, NAIC, with Michael Hargens and Judd
19   Treeman and Aaron Mann is also on the line, as well as our
20   paralegal, Tricie Loudon.
21            THE COURT:  All right.  Thank you very much.
22            Well, I'm going to talk about the motions in limine
23   first, and hopefully I've got a good grasp of this because I
24   finished them about five minutes ago.  I'm going to give a stab
25   at it.
```

1      The first one is plaintiff's suggestions,
2  Document 143, seeking to bar introduction of evidence regarding
3  the five-year rule. I'm going to deny that motion and I will
4  take that with the case and rule it based upon what I find the
5  evidence supports.
6      The next motion is the plaintiff's motion to bar
7  defendant from introducing evidence regarding plaintiff's offer
8  to sell for a flat fee. That's Document 144. I'm going to
9  grant that motion.
10     The next motion is the plaintiff's motion to bar
11 defendant from introducing evidence or argument regarding the
12 limitation of liability clause. I'm going to take that under
13 advisement, and we'll either rule it with the summary judgment
14 motion or otherwise address it prior or during trial.
15     Next one is plaintiff's motion regarding Mr.
16 Mathur's construction of the license agreement. Mr. Mathur can
17 testify as to how the agreement was applied, but he cannot
18 define the meaning of the agreement beyond how it was applied
19 assuming that he has knowledge regarding application or any
20 inquiry that might be made of him regarding application.
21     And the next one is defendant's motion in limine
22 No. 1, failure to reasonably market SBS prior to February '05.
23 I'm going to deny that motion. I believe that is relevant and
24 admissible.
25     And the next one is defendant's No. 2, NAIC's

alleged control of NIPR and Gateway system. I'm going to deny that unless otherwise ruled with the summary judgment motion, and I don't know what the evidence ultimately is going to support regarding the relationship between NAIC and NIPR, but it does seem rather evident that there was a relationship there; and if there's not sufficient evidence to pierce the corporate veil, there may be evidence that may be relevant as to the defendant NAIC's input and direction and control otherwise to NIPR to the plaintiff's detriment; and depending upon what evidence might be presented along those lines, it may very well be deemed to be relevant by me.

And the next one is defendant's motion in limine No. 3, the hiring or solicitation of Mr. Saini. That's Document No. 130. I would -- I'm inclined to allow that to be used to impeach or cross-examine Ms. Fritz, and that's my position on that, for now anyway.

Next one is No. 4, alleged cultural bias. That's Document 131. I'm going to sustain that motion.

Next one, No. 5, NAIC's annual revenues or net worth. I'm going to overrule that motion. That's Document 132. I believe that it is relevant as argued potentially on the lack of -- or the argument of lack of marketing effort.

And defendant's motion No. 6, Document 133, alleged underpayment on Exhibit A transactions. I'm going to deny that

4

unless it's otherwise ruled on the summary judgment motion when we get that completed. And I'm taking 6, 10, and 14 in that order because that's the way the response was provided.

No. 10, which is Document 137, the royalty reports related to plaintiff's Count 3 claim. I'm going to deny that unless otherwise ruled on the summary judgment motion and the same ruling on No. 14, new damages theory on Count 3, which is Document No. 141.

And the next motion is No. 7, Document 134, use of defendant's supplemental answers to Interrogatory No. 9. You know, that's an awful lot of information to try to digest and comprehend, but this does not seem to me to be submissible as a measure of damages. If it is offered at trial, I will likely sustain an objection to it based upon my understanding of the issue at the current time, and that's about the best I can tell you on that right now.

Motion No. 8, Document 135, prejudgment interest, I'm inclined to agree -- or to sustain this motion. I'm inclined to agree with the defendant's position on this; but, again, I'm going to take this with the case and we'll rule it at trial based upon what the evidence is and hopefully a better understanding on my part in that regard.

Motion No. 9, Document 136, alleged damages related to the SERFF transactions. It seems to me that this was an issue that was addressed in discovery, but I have real

5
Case 4:11-cv-00173-GAF   Document 190   Filed 05/23/13   Page 5 of 14

reservations about submitting a damage claim based upon gross revenues and believe that there has to be a more precise or specific measure of the damages pursuant to the contract terms here rather than to just submit it on the basis of gross revenues and a claim of entitlement to a royalty of 50 percent on that. I am not saying that as a definitive ruling on this motion, but I'm saying that is my inclination about it, and I will consider it based upon the evidence that's presented.

Next is defendant's motion No. 11. I was pleased to find when I got to this motion that there's no opposition. So that one's sustained.

And No. 12, defendant's status as a nonprofit organization, I'm going to deny the motion to exclude any evidence or reference to any motivation to make a profit, which seems to be what that's all about.

Next, defendant's motion No. 13, Document 140, hypothetical revenue that would have been received. Again, the plaintiff states that they do not intend to offer any such evidence at trial, and that motion is sustained.

So that's the best I can tell you on the motions in limine now. I know that you all have -- well, at least the contract provides for nonbinding mediation so I presume you've done that, but it's my practice after a pretrial conference to send the parties to a magistrate judge to discuss the possibility of settlement unless someone tries to convince me

that that's a waste of everybody's time and effort.

So, Mr. Johnson, do you want to try and convince me that I should not refer you to a magistrate judge to discuss the possibility of settlement?

MR. JOHNSON: I'm not going to argue against that, Your Honor.

THE COURT: And Mr. Simon?

MR. SIMON: I'm not going to try to convince you either.

THE COURT: All right. I will do that and you will be hearing from someone.

We're working on the summary judgment motion, and hopefully we'll be able to get that to you before a settlement conference is scheduled, and hopefully we'll have that to you in a week or ten days.

Assuming that this matter does not get resolved, Mr. Johnson, what's your best estimate of how much time you're going to need to present your case?

MR. JOHNSON: I think it's going to be about five to six days on our case in chief. I've gone through each of our witnesses and tried to outline exactly how much time it's going to take. We have two principal witnesses, Venu Gopal on our side and Julie Fritz on the NAIC side. Each of them will take about a day and a half each. And we have a series of witnesses which will be relatively short after that, but my best estimate

1  will be about five to six trial days presenting our case in
2  chief.
3           THE COURT:  Thank you.
4           And, Mr. Simon, how much time do you think you're
5  going to need beyond that?
6           MR. SIMON:  Well, Judge, if I might ask you one
7  question regarding your practice.  If a witness is called to
8  the stand, is their entire testimony taken at that time or will
9  I need to call Mr. Gopal and Ms. Fritz as part of my case in
10 chief?
11          THE COURT:  I don't require it to be done a
12 particular way.  You know, I ask that the parties cooperate to
13 try not to inconvenience a witness any more than necessary; and
14 if you have someone from out of town, it is common courtesy to
15 not make them sit around and twiddle their thumbs for a week
16 until you call them in your case, but I'm flexible on that, but
17 I want to take the witness into consideration as to what works
18 best for them as well.
19          MR. SIMON:  Sure.  And we'll work cooperatively on
20 them, I'm sure.  This is a little bit more of a guesstimate
21 than I might like to be able to give you.  I'm not sure how
22 much I will cover as part of Steve's case, but I better tell
23 you three days to three and a half on my case.
24          THE COURT:  Okay.  I understand that it's an
25 estimate on your part, and I'm not asking you that to just hold

```
 1  you to it.  I'm just trying to get, you know, a reasonable time
 2  frame that we might be looking at.  So that's fine.
 3          Mr. Johnson, do you intend to present any testimony
 4  solely by way of deposition?
 5          MR. JOHNSON:  I think we probably will have some
 6  videotaped depositions that we'll play and then we'll bring in
 7  live witnesses, particularly some of these witnesses out of
 8  town or outside the subpoena power of the Court.
 9          THE COURT:  I'm sure you will, but I would
10  appreciate you getting me the transcript of that testimony as
11  soon as you can so that I'll have an opportunity to go over it
12  and we won't have to have a delay in trial for me to rule any
13  objections that the parties might have.
14          MR. JOHNSON:  Very good.  We have designated
15  deposition transcript excerpts and each party have been
16  exchanging objections.  We have another set of papers going in
17  on that today.
18          THE COURT:  I generally don't spend a lot of time
19  looking at the objections to the deposition designations unless
20  it's a transcript that is going to be presented in lieu of
21  calling a live witness, and so I'm really just concerned if
22  you're going to present any testimony of a witness solely by
23  way of their deposition, that I want both sides to get the
24  transcripts of those depositions to me as soon as possible and
25  let me know that it is a witness whose testimony is going to be
```

9

```
 1   presented in that fashion.
 2              MR. JOHNSON:  Very good.  We'll do that, Your Honor.
 3              THE COURT:  Mr. Johnson, are you going to be the
 4   lead attorney at trial?
 5              MR. JOHNSON:  I'll be the lead attorney along with
 6   Peter Gallagher, my partner, who is also on the phone.
 7              THE COURT:  Okay.  And it will be just the two of
 8   you?
 9              MR. JOHNSON:  The two of us and Shannon Fields, an
10   associate with our office, will accompany us to trial as well.
11              THE COURT:  Okay.  And will you have a corporate
12   rep?
13              MR. JOHNSON:  Yes.  Venu Gopal I expect will attend
14   trial.  He is the president and CEO of Aithent.
15              THE COURT:  And, Mr. Simon, are you lead counsel for
16   the defendant?
17              MR. SIMON:  Yes, Your Honor, I will be.
18              THE COURT:  And who will accompany you?
19              MR. SIMON:  Mr. Hargens and Mr. Mann and likely Mr.
20   Treeman as well.
21              THE COURT:  All right.  Well, Mr. Mann can help you
22   find my division.
23              And will you have a corporate rep?
24              MR. SIMON:  Yes, Your Honor.  Our corporate rep will
25   likely be Julie Fritz, F-r-i-t-z.
```

1          THE COURT:  And tell me what her position is again.
2          MR. SIMON:  Well --
3          THE COURT:  Or what it is now.
4          MR. SIMON:  She's an officer of NAIC, and she's in
5    charge of a division that includes the SBS -- the software
6    issue here in this lawsuit.  I can get you her exact title.
7          THE COURT:  Okay.  Would you do that and just send
8    me -- send my courtroom deputy an e-mail and let her know what
9    Ms. Fritz' title is.
10         MR. SIMON:  Yes, I will.
11         THE COURT:  Mr. Johnson, do you have anything else
12   that you want to talk about or ask me about the process?
13         MR. JOHNSON:  Sure.  I have two questions actually.
14   One is both parties have designated deposition transcripts.  If
15   there is a live witness who is appearing, does the Court allow
16   you to also put in testimony through the transcript or
17   videotape?
18         THE COURT:  Yes, I will.
19         MR. JOHNSON:  Okay.  The other question is I noticed
20   in your rules that you limit nonparty witnesses, their
21   examination to 60 minutes, and we do have a couple different
22   parties who were formerly employed by NAIC whose testimony will
23   be presented, and I'm wondering how much leeway, if any, Your
24   Honor allows with respect to that rule, if we're allowed to go
25   over an hour?

1    THE COURT: Yeah, I'm flexible with that. I'd like
2 for you to give me a heads-up as to what your estimate is of
3 the time that you need; and, you know, if you're being
4 productive with it, I'll let you do what you need to do.
5    MR. JOHNSON: Okay. Very good, Your Honor.
6    THE COURT: And, Mr. Simon, is there anything you
7 wanted to inquire about?
8    MR. SIMON: Your Honor, one question which is really
9 a matter of how you like to handle things. There is an
10 attorney fee provision in this contract, and I suspect that one
11 side or the other is successful may be pursuing a claim for
12 fees on the contract, and is that something in your practice
13 you take up as part of posttrial motions or do you prefer that
14 to be handled in a separate proceeding or if you can give us
15 any guidance on that.
16    THE COURT: Yeah, typically it is a matter of
17 posttrial motions, and that's fine with me if you want to
18 approach it that way.
19    MR. SIMON: Very good. Thank you, Your Honor.
20 That's all I had.
21    THE COURT: Okay. All right. Well, you all will be
22 hearing from one of our magistrate judges and be setting up an
23 opportunity to discuss the case with you. And if you don't get
24 it worked out, we will see you on June the 17th for a week and
25 a half or so.

```
 1              MR. JOHNSON:  Very good.  Thank you, Your Honor.
 2              THE COURT:  Is that all from you, Mr. Johnson?
 3              MR. JOHNSON:  That is all from me.  Thank you, Your
 4   Honor.
 5              THE COURT:  Mr. Simon?
 6              MR. SIMON:  No.  That's all I had, Your Honor.
 7              THE COURT:  All right.  Thank you all very much.
 8   Bye.
 9              (Adjournment)
```

REPORTER'S CERTIFICATE

     I, Katherine A. Calvert, Registered Merit Reporter, hereby certify that I am a duly appointed, qualified, and acting official court reporter for the Western District of Missouri; that on May 14, 2013, I was present and reported all of the proceedings in AITHENT, INC., Plaintiff, vs. THE NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS, Defendant, No. 11-CV-00173-GAF.

                                    _____, RMR
                                       Registered Merit Reporter

Dated this 23rd day of May, 2013.